Rhodes v. Otis.

# RHODES vs. OTIS.

[ACTION TO RECOVER DAMAGES FOR OBSTRUCTION OF WATER-COURSE.]

1. *Onus of proof on question whether stream is navigable.*—All streams below tide-water being. *prima facie*, public, while all above it are, *prima facie*, private, the *onus* of proof is on a party who claims that a stream above tide-water is navigable.

2. *What constitutes navigable stream.*—In determining whether a stream is navigable, inquiry should be made as to the following points: whether it is fitted for valuable floatage; whether the public generally, or only a few individuals, are interested in the transportation on it; whether any great public interests are involved in the use of it for transportation; whether its capacity for floatage continues for periods long enough to make it susceptible of use beneficially to the public; whether it has been previously used by the people generally, and, if so, how long; how it was considered and treated in the government surveys; and whether, if declared public, it will probably be of public use for carriage in future. Tested by these principles, Bashi creek, in Clarke county, Alabama, under the evidence set out in the record in this case, is not a navigable stream.

3. *Whether stream is navigable, is question of law.*—When the facts are ascertained, it is a question of law for the court whether a stream is a public highway.

4. *Charge on effect of evidence.*—A party has the right to require the court to instruct the jury as to the legal effect of the evidence, when, after conceding all points on which there is a conflict of evidence, and all adverse inferences from the evidence, the undisputed facts establish a legal conclusion in his favor; and the refusal of such a charge when requested, unless some sufficient legal reason for the refusal is shown, will work a reversal of the judgment.

5. *License not within statute of frauds.*—A grant of the privilege of floating spars down a private stream, not involving the holding or occupation of the land, is a mere license, and not a contract within the statute of frauds.

6. *When license is irrevocable.*—A parol license to float spars down a private stream, obtained for valuable consideration, cannot be revoked by the grantor, when the grantee, having acted under it, would be injured by the revocation: the doctrine of estoppels *en pais* applies to such a case.

7. *Duplicity.*—A complaint in trespass on the case, which unites in the same count a cause of action growing out of the defendant's obstruction of the navigation of a public stream with his breach of duty under a contract with plaintiff respecting the navigation of the stream, is objectionable for duplicity.

APPEAL from the Circuit Court of Choctaw.

Tried before the Hon. C. W. RAPIER.

Rhodes v. Otis.

THE complaint in this case was as follows:

"William Otis $\rbrace$ The plaintiff claims of the defendant
   vs.   twenty thousand dollars, because the
James Rhodes. $\rbrace$ plaintiff, having, in Clarke county,
upon or near a water-course, or creek, called Bashi creek,
which, in the winter-time, and at other rainy seasons, was
navigable by rafts of large size, and by vessels of many
tons burden, and which was at such times commonly used
for such navigation, been engaged in cutting, hewing,
and getting large sticks or pieces of timber, called spars,
the property of the plaintiff, to be used in the building
and completion of ships and other vessels; and the
• defendant, who claimed to be the owner of a large tract
of land, lying and being on both sides of said creek, hav-
ing, to-wit, on the 22d March, 1854, for the price and sum
of twenty-five dollars paid to him by the plaintiff, con-
sented and agreed to permit plaintiff to use a parcel of
said tract of land upon said creek, and within and sur-
rounded by the rest of said tract, as a landing-place for
said spars, or place for deposit, rafting and launching, or
floating off of said spars, upon the waters of said creek,
and down the same to the Tombeckbe river some three
or four miles, and to float said spars upon the waters of
said creek, and down the same, through his (defendant's)
premises; and the plaintiff having collected at said place,
formed into rafts there, and begun to float off said spars,
as he lawfully might and had the right to do, upon said
creek, when the waters thereof had risen, and the creek
became navigable as aforesaid, and down the same, for
the purpose of getting said spars to Mobile to market, as
he could have done; this mode of removing said spars
being the mode most convenient, and almost the only
practicable one to plaintiff, and of no disadvantage or the
least to the defendant,—he, the said defendant, and his
servants and agents by his command or procurement, to-
wit, on the —— day of ——, 1854, and on divers other
days thereafter, unlawfully and maliciously, by threats,
and by erecting obstructions, and by felling trees across
said creek, between said spars and the river, and other-
wise, forcibly hindered and prevented plaintiff from float-

ing off and carrying away said spars, which were of great value, to-wit, of the value of $15,000, out of said creek, so that they might be sold, or used as aforesaid; and thereby caused a loss to plaintiff of the whole value of said spars, besides other great expense and damage, to the amount of $20,000 as aforesaid, to-wit, in the county aforesaid."

The defendant demurred to the complaint, on the following specified grounds: "1st, because it does not show whether the action is founded on a contract or a tort; 2d, because, if it is founded on an alleged contract, it does not set forth the contract with sufficient certainty to show its terms; 3d, because, if it is founded on an alleged contract, it does not show a breach of that contract; 4th, because, if it is founded on an alleged tort, it does not show that Bashi creek was or is a navigable stream; 5th, because it does not show any right in the plaintiff to float or raft his spars down said creek, through the defendant's lands; 6th, because it does not show any illegal act of the defendant; and, 7th, because it is vague, uncertain, and insufficient in law." The court overruled the demurrer, and the defendant then pleaded the general issue, in short by consent; on which plea issue was joined, and a trial thereon had.

It appeared from the evidence adduced on the trial, as the same is set out in the bill of exceptions, that the defendant, in the years 1853, 1854 and 1855, owned a plantation in Clarke county, on both sides of Bashi creek; that the plaintiff had been engaged, during the summer and fall of the year 1853, in getting out spars above said plantation on the creek, and had got out a large number; that he had begun, in the fall of that year, to haul these spars to a point on the creek below the defendant's plantation, to be rafted and floated down the creek, during the ensuing winter and spring, to the Tombeckbe river, into which the creek emptied, and thence to Mobile; that the roads leading to the landing became bad, and the plaintiff then determined, for the purpose of avoiding the labor and difficulty of hauling the spars over them, to make a contract with the defendant, if he could, by which he

might obtain a place within the defendant's plantation for the deposit of his spars, and from which they might be floated down the creek through said plantation. "George Cox, a witness for the plaintiff, was asked by the plaintiff's counsel, whether an agreement on that subject was made between the plaintiff and defendant, and what were its terms. The defendant objected to the question, unless the agreement was in writing; and the witness stating that the agreement was not in writing, the defendant objected to the witness stating what the terms of the agreement were, on the ground that parol evidence was inadmissible to prove such an agreement, and that such agreement, unless in writing, was void under section 1551 of the Code. The plaintiff's counsel stated, that he expected to show that the agreement was for a term of less than one year, and that a consideration in money had been paid for it, and that the plaintiff had been put in possession under the contract as far as he could be; and the court thereupon overruled the defendant's objections, and allowed the questions to be asked; to which the defendant excepted."

The witness then testified in reference to the contract as follows: "Witness was then in the plaintiff's employment, and, at plaintiff's request, asked defendant if he would let the plaintiff have the use of a landing on the creek within his plantation for depositing his (plaintiff's) spars, and the privilege of rafting them down the creek through his plantation. The defendant agreed that plaintiff might do so, for twenty-five dollars. Witness understood that the spars were to be rafted down that season, but could not say that he had so told the defendant, or that the defendant so understood it." The defendant objected to the admission of this evidence, "on the ground before stated," and reserved an exception to the ruling of the court in admitting it. The witness Cox further testified, "that the plaintiff and defendant, in pursuance of this contract, selected a place on the creek within the defendant's plantation, a little below Bashi bridge, for the plaintiff to deposit his spars; that the defendant had a field of cotton there, and, to make room

for plaintiff's spars, the fences had to be moved, and about a half-acre of his cotton-field turned out, and the cotton on it lost; and that the plaintiff afterwards hauled and deposited spars there." The plaintiff also proved that, on the 2d March, 1854, he paid the twenty-five dollars to the defendant's overseer, and took his receipt for the same, wherein the money was acknowledged to be "in full settlement for use of land for spar-landing."

"Bashi creek, it was proved, ran through the defendant's plantation and lands. Its general direction was from east to west, and it emptied into the Tombeckbe river at a point about six miles distant in a direct line from the defendant's plantation. A public road, which ran through the eastern part of the plantation, crossed said creek within the plantation by a bridge, commonly called 'Bashi bridge.' The defendant's lands extended a mile or more below the bridge, on both sides of the creek, which ran through them in a winding course, and a part of the way through wooded land. To the eastward, above the defendant's lands, and about one-fourth of a mile above said bridge, another creek, called 'Tallahatta creek,' falls into Bashi creek. In the years 1853 and 1854, the defendant had fields in cultivation, on both sides of the creek, below said bridge, and above the bridge on the north side; but the creek was not enclosed within the fields in 1853, and never had been."

The plaintiff proved that, during the fall and winter of 1853, he collected a large number of spars at the landing-place below the bridge within the defendant's plantation, and at the junction of the two creeks, had them inspected as fast as possible, and prepared for rafting down the creek at the first rise; that the spars were from sixty-six to one hundred feet long, and from twenty-five to thirty-six inches thick; that his hands cleared out the creek, from the landing-places down to its mouth, cutting away the willows, drift, &c., and removing logs, so that the spars might be floated down without obstruction at the first rise; that a few days after the completion of this work, in the early part of March, 1854, there was a rise in the creek from head-water, by which he was enabled to float

down the river in safety about forty-three spars; that a second rise in the creek, higher than the former, took place a few weeks afterwards, and all of his hands were engaged on the rafts at the landings, preparing to float them off, when the defendant, with his overseer, came to the landing below the bridge, and forbade the floating of them through his premises, telling the men that, if they broke through his water-fences, it would be at their own peril; that the men nevertheless got the rafts afloat, and endeavored to carry them down the creek; that their passage was obstructed by two water-fences, and by a large sycamore tree which had been felled across the bed of the creek; that they succeeded in carrying the spars over the first fence, and a portion of them were with difficulty carried over and through the sycamore tree; but they were unable to get any of them over the second fence; that the waters of the creek fell while they were in this condition, and there was not another rise during the rest of the year, nor was there any rise during the winter of 1855, which was a remarkably dry season; and that the spars were consequently left in the creek, and became rotten and worthless. The plaintiff's evidence conduced to show, that these obstructions were placed in the creek by the defendant, or under instructions from him, for the purpose of preventing the passage of the plaintiff's rafts. The defendant's overseer, however, testified, that he had the tree felled across the creek, without instructions from the defendant, to enable persons to cross on foot; and that he had also erected the water-fences, under instructions from the defendant, to keep stock out of the plantation. In reference to these matters, there was some conflict in the evidence; but, as no question of law is involved in them, it is unnecessary to state all the evidence. The evidence was also conflicting, as to whether the passage of the rafts was prevented by these obstructions, or by the want of a sufficient rise in the river; the plaintiff's witnesses testifying, that the rise was sufficient, if the creek had not been obstructed; while the defendant's witnesses asserted the contrary.

"Much evidence was introduced on both sides in refer-

ence to Bashi creek, and whether it was a navigable stream or not. Several old citizens of Clarke county, who had known the creek for many years, testified, that the tide did not ebb and flow in it, nor in the Tombeckbe river at its mouth; that the creek rose in a high, hilly country, flowed westwardly, and emptied into the Tombeckbe river. Most of the witnesses stated, that from the source to the mouth of the creek, in a direct line, was from twenty to twenty-five miles; and one witness said, that it might, perhaps, be as much as thirty miles. The course of the creek was crooked, making the distance from its source to its mouth by the course of the creek greater than by a direct line. In the upper part of the creek, the fall was considerable, and the current rapid; but in the lower part, for a few miles above where Tallahatta creek emptied into it, it flowed through more level land, the fall was less, and the current not so rapid. The banks and bottom of the creek were generally sandy, and were so where it passed through the defendant's plantation, and formed some bars in its bed. In the summer time, and in dry spells, the water in the channel of the creek, in several places in defendant's plantation, was not more than six inches in depth. There was no evidence that the creek had ever been navigated by any boat or other water-craft, or had ever been used to float rafts, spars or timber, until the plaintiff attempted so to use it as hereinbefore stated. A number of citizens, who had lived on or near the creek, and had known it well for many years, testified, that they had never known it to be navigated in any manner, or to be used for floating rafts, spars or timber, before this attempt by plaintiff so to use it; and that no one had tried so to use it since.

"When there were high freshets in the Tombeckbe river, there would be back-water in the creek, to a distance and depth proportionate to the height of the water in the river. In very high freshets in the river, the back-water in the creek would extend up as high as Bashi bridge; and one witness said, he had seen it deep enough there to float a steamboat. Sometimes there were freshets in the creek from head-water, caused by rain, which

soon ran out. One witness said, that when the creek rose from a single day's rain, it would fall again in less than twenty-four hours, so that spars could not be floated down it from either of the landings through the defendant's plantation; but other witnesses testified, that when the ground was very wet prior to a heavy rain, the rise might last longer; and one witness thought, it might last as long as one week. When there were heavy rains for several days in succession, the rise would continue all that time; but as soon as the rain ceased, it would soon fall again—in twenty-four hours, one witness said; others said in about that time, and one thought it might, perhaps, last as much as a week. Ordinarily, rafts or spars could not be floated down the creek through the defendant's plantation: this could only be done when there was back-water in the creek from the river, or a freshet from head-water from rains. From the spring of 1854, until some time during the winter of 1856, there was not at any time water enough in the creek, either from back-water or from freshets, to float spars through defendant's plantation; but it was proved that this was one of the dryest seasons ever known in this part of the country, and that steamboats did not run up the Tombeckbe river, during the winter and spring of 1854–5, higher up than to Demopolis in Marengo county. During the year 1858, on the contrary, there had been much rain; the Tombeckbe river had been generally very high, and the back-water from it had, for a considerable time, extended up the creek through the defendant's plantation to the bridge; some of the witnesses said, for two or three months.

"There was no proof that the creek, at any particular period or season of the year, where it flowed through the defendant's plantation, could be relied on for floating rafts or spars; but there were some times, in most years, when, from freshets or back-water, it could be used for that purpose. Witnesses, who had known the creek well for many years, were asked to estimate and state to the jury what length of time, or what number of days in the year, of an ordinary average year as to rain, the creek

could be so used. Several of them said, that it was so uncertain they could make no satisfactory estimate. The witness Lewis, who had known the creek well for more than fifteen years, said, that, on an average, one year with another, he supposed it might be so used for floating rafts, taking every day, as much as two months from freshets, and from head-water and back-water together as much as two and a half or three months. Some other witnesses made about the same estimate, and none estimated it higher than three months. The width of the creek, below its junction with the Tallahatta, was greater in some places than in others. Some witnesses estimated its average width from bank to bank, at the top of the banks, at one hundred feet, or upwards, and from seventy-five to eighty feet at the bottom of the banks; other witnesses estimated it at less; while all of them stated, that they had never before known of any rafts being floated down it from as high up as the bridge, nor any boat to go up or down it, and that no spars had been got on that stream before or since. It was proved, however, that the business of getting spars is of recent origin. There is no site on the creek for a mill below the mouth of the Tallahatta, and freshets and back-water would prevent its being used for that purpose. It is about six miles, in a direct line, from the mouth of Tallahatta, where it empties into Bashi creek, to where Bashi creek empties into the Tombeckbe river."

"The court charged the jury, among other things, as follows: 'The plaintiff claims damages of the defendant on two grounds: 1st, that Bashi creek is a navigable stream and public highway, and that he has been damaged by obstructions placed in it by the defendant; or, 2dly, that if it was not a navigable stream, he has a right to use it for floating down spars through the defendant's plantation by contract with the defendant. It is the province of the jury to determine from the evidence, under the law as charged by the court, whether or not the creek is a navigable stream and public highway. To make a stream a navigable stream and public highway, it must have an aptitude for public servitude, by

being capable of floating vessels, boats, or rafts: if it can be so used only occasionally, and for but short periods of time, it is not a navigable stream; but if a stream is of such a character that it can be used, with convenience and advantage to the public, for a considerable part of the year, for floating boats, vessels, rafts, &c., during an ordinary average year, for as much as two or three months in all, though sometimes only for a few days at a time, it is a navigable stream in law. If the jury believe from the evidence that Bashi creek, during an ordinary average year, can be used for floating rafts of spars, conveniently and beneficially, for as much as two or three months in all, though sometimes for only two or three days at a time, it is a navigable stream and public highway, and the defendant had no right to put any obstructions in it; and if he did put obstructions in it, and the plaintiff could not remove or cut them out without delay or difficulty, and was thereby damaged, the plaintiff has a right to recover from the defendant in this action the amount to which he was thereby damaged. If the creek is a navigable stream, the plaintiff had a right to remove any obstructions put in it by the defendant, and it was his duty to remove them, and not wantonly to abandon his property and throw the loss on the defendant, if the obstructions were of such a character that the plaintiff could have removed them in time to save loss. But, if the jury believe from the evidence, under the law as charged by the court, that Bashi creek is not a navigable stream and public highway, then it is the defendant's private property where it passes through the defendant's plantation, and he had a right to put his water-fences across it; and the plaintiff has no right to complain of this, unless the defendant had given him a right of way along it by a valid contract. In this view of the case, the jury will have to determine from the evidence whether or not there was such a valid contract between the parties. It is true, as insisted by the defendant's counsel, that no contract is valid which, by its terms, is not to be performed within a year, unless it is in writing; but, if by the terms of the contract it is uncertain and indefinite as to the time of

performance, that is, if it is not expressly stated in words, the jury may judge from the circumstances whether it was the understanding and meaning of the parties that it was to be performed within a year; and if so, it is valid, though not in writing. It is also true, as insisted by the defendant's counsel, that a right of way over a man's lands is an easement, or servitude; and that if a contract is made for such a right of way, for a longer term than one year, it is void, unless in writing. But a parol contract, granting such a right of way for a term of one year or less, for a valuable consideration, is valid and binding on the parties, *though not in writing;* and if by the terms of the contract the length of time for which the right of way was given was not expressly specified, the jury may judge from the circumstances whether or not it was the understanding and meaning of the parties that it should only be used for a year or less; and if so, the contract is valid, though not in writing.' "

The defendant reserved an exception to this charge, and then requested the following charges:

"1. That where a stream, which can only be used occasionally, and when there is back-water or a freshet, for navigation or floating rafts, runs through a plantation, it is so far the private property of the owner of the lands on each side, that no other person has a right to use it for the purpose of floating timber along it through such plantation." This charge the court refused to give as asked, but gave it with this qualification, "that if the stream could be used advantageously for floating rafts, during an ordinary or average year, for as much as two or three months in the whole, though sometimes for only two or three days at a time, it would be a navigable stream, and other persons would have the right to use it for floating rafts during the time it was navigable;" to which qualification, as well as to the refusal of the charge as asked, the defendant excepted.

"2. That a right to float timber along such a stream, through the lands of another, is an easement, or servitude, and an interest in lands within the meaning of section 1551 of the Code; and that no contract for such a right is

valid, unless it is in writing, as provided by that section of the Code.

" 3. That there is no evidence in this case of such a contract as was binding on the defendant to permit plaintiff to float his spars down Bashi creek through the defendant's plantation.

"4. That the evidence in this case is not, in law, sufficient to prove that Bashi creek is a navigable stream, or public highway.

" 5. That if the jury believe from the evidence that the contract was made for the right to land spars on defendant's lands, and to float them through his lands, it was for an interest in lands ; and that such a contract, if not reduced to writing, was void, although it might not have specified that it was to be performed within one year."

The court refused each of these charges, and to each refusal the defendant excepted ; and he now assigns as error all the rulings of the court on the pleadings and evidence, and in the instructions to the jury, to which he reserved exceptions.

WM. G. JONES, for the appellant, made these points :

1. The demurrer to the complaint should have been sustained. It is a violation of the plainest, best-settled rules of pleading. It embraces a cause of action *ex contractu* and another *ex delicto*, not only in the same action, but in the same count. It is in fact difficult, if not impossible, from the confused manner in which matters *ex contractu* and matters *ex delicto* are mingled in the complaint, to tell whether the pleader intended to proceed for a breach of contract or for a tort. In either point of view, no good cause of action is shown. If the action be case for obstructing a navigable stream, the complaint should have averred that the stream was navigable. If it be for a breach of contract, the terms in which the contract is stated are too indefinite, and no sufficient breach is alleged. The defendant could not know how to plead to such a complaint. In an action on a contract, no evidence of malice could be given, and no vindictive

damages be assessed; but, in case, it might be different. One portion of the jury might believe that there was a contract, and a breach of that contract, but that the creek was not a navigable stream; while the other portion might believe that there was no contract, but that the creek was navigable. Such a confused mode of pleading cannot be allowed.

2. The court erred in its rulings as to the validity of the alleged contract, and the admissibility of parol evidence of its terms. If the creek was a navigable stream, the plaintiff had a right to use it without any contract or permission from the defendant; and a contract for the right of way would be a nullity. If, however, the creek was a private stream, the right to float spars down it could only arise from a valid contract. Such right of way is an easement, or servitude; it is an incorporeal hereditament; a thing which lies in grant, and not in livery. At common law, independently of the statute of frauds, such a right could only be granted by deed, no matter for how short a time. On this point see the following authorities: Co. Litt. 42; 1 Thomas' Coke, 717; Browne on Statute of Frauds, 23–30, § 232; Archbold on Landlord and Tenant, (53 Law Library,) 2; Hewlins v. Shippam, 5 B. & C. 221; Wood v. Ledbitter, 13 M. & W. 838, 842; Cooke v. Stearns, 11 Mass. 533; Riddle v. Brown, 20 Ala. 412, 418. It is also clear on principle, and is so laid down by the best authorities, that a right of way, or any other easement, is an interest in lands, within the meaning of the statute of frauds; and, consequently, that every contract for it, not in writing, is void. Cases cited *supra*. In Riddle v. Brown, 20 Ala. 418, the contract was in reference to a right to dig ore, granted by parol, for valuable consideration, for an indefinite and uncertain time; and the court said in reference to it, "A verbal contract for an easement like this would have no more binding force in law, under the statute of frauds, than if it had been simply for the land itself."

There is no force whatever in the idea on which the court below acted, that the case comes within the exception as to leases for a year or less. It may be doubted

whether a right of way can be the subject-matter of a lease. But, conceding that it might be, the contract in this case contains none of the elements or characteristics of a lease. There was no rent reserved by it. It was a grant for an indefinite time. The authorities are clear, that such a grant of an incorporeal hereditament, or even of land, at common law, was a grant of a freehold for life; while our statute makes it a grant in fee. Yet the court below allowed parol evidence of such a contract to be given to the jury, and instructed them that it was valid, though not in writing, if they believed from the circumstances that the parties contemplated and intended its performance within a year.

3. The undisputed facts in the case showed that Bashi creek is not, in law, a navigable stream, or public highway. It is above tide-water. It has never been navigated by any boat, vessel, or water-craft whatever, though the country through which it flows has been settled for many years. No one has ever attempted to use it for the purposes of rafting, with the single exception of the plaintiff's attempt in this case. To hold such a creek a navigable stream, will manifestly be not *pro bono publico*, but *pro hac vice* to benefit the plaintiff in this particular case. No case can be found, which justifies the court in charging the jury, as matter of law, that a shallow, fresh-water creek, which has never been used for purposes of navigation or rafting, and which cannot be so used generally, nor even at any stated period of the year, is, in law, a navigable stream, if it can be used, from freshets or backwater, as much as two or three months in the year, though only for two or three days at a time. Such a principle would convert almost every little creek, bayou, and many spring-branches, into public highways. The doctrine is contrary to common understanding, common law, common justice, and many adjudged cases. Such streams have uniformly been held to be private property, and not public highways.—Woolrych on Water Courses, 41; Angell on Water Courses, §§ 535, 535 *a;* Rex v. Montague, 4 B. & C. 598; Munson v. Hungerford, 6 Barbour, 265; Curtis v. Keesler, 14 Barbour, 511; People v. Platt, 17 John.

195; Ellis v. Carey, at June term, 1857, of this court. The court will take judicial notice of the fact, that Bashi creek was not treated as a navigable stream by the United States surveyors.—Wright v. Phillips, 2 Greene's (Iowa) R. 191; 1 Greenleaf on Ev. §§ 8, 9; 1 Halstead's Law of Evidence, 328.

A. R. MANNING, contra.—1. Under the provisions of the Code, a demurrer can only be allowed for matter of substance, which must be specified in the demurrer. Duplicity was not assigned in this case as a ground of demurrer; and it it had been specially assigned, it would not have been good. Several of the forms expressly authorized by the Code, not only in complaints, but also in indictments, would have been demurrable for duplicity at common law.

2. If the use of a water-course through a person's lands, for the purpose of floating a lot of spars down it, be an interest in real estate, within the meaning of the statute of frauds; a letting of such use to another, for a term not exceeding one year, may still be made by parol contract.—Code, § 1551. An incorporeal hereditament may be made the subject of a lease.—2 Bla. Com. 317–18. But, even if the contract was not valid as a lease, it was a legal license to the plaintiff to use the stream for the specified purpose; and being founded on valuable consideration, it could not be revoked by the defendant after the plaintiff had been induced to act under it, and when he was in such a situation that the revocation would necessarily injure him.—Browne on Statute of Frauds, § 27; Wood v. Manly, 11 Ad. & El. 34; Wood v. Ledbetter, 13 Mees. & W. 853; Patrick v. Colerick, 3 Mees. & W. 482; 20 Viner's Abr., tit. Trespass, H, a, 2; Le Fevre v. Le Fevre, 4 Serg. & R. 245; Rerick v. Kern, 14 Serg. & R. 267; Wilson v. Chalfant, 15 Ohio, 248; Heeney v. Heeney, 2 Denio, 625; Dubois v. Kelly, 10 Barbour, 508; 2 American Leading Cases, 535, et seq.

3. The law in regard to navigable streams was correctly laid down in the affirmative charge given by the court. Code, §§ 1205, et seq.; 3 Kent's Com. 427; Angell on

Highways, §§ 53, 54, 70; Shaw v. Crawford, 10 John. 246; Brown v. Scofield, 8 Barbour, 243.

4. The bill of exceptions shows that the evidence was conflicting on nearly every material point in the case; and the rule is well settled, that a party has not, in such case, a right to demand a general charge on the effect of the evidence. Moreover, the evidence was so voluminous, that the court could not be required to charge on its general effect.—Knox v. Fair, 17 Ala. 503. To hold that a party has the right to require the court to give such a charge, no matter how conflicting or voluminous the evidence may be, would impose on the judge the necessity of taking down all the testimony in writing, and, in effect, would be equivalent to requiring a joinder in a demurrer to evidence.

A. J. WALKER, C. J.—The word navigable has, in the English common law, a technical meaning, and is used to describe public rivers where the tide ebbs and flows. Angell on Water Courses, 604, § 542; 3 Kent's Com. 512; Stuart v. Clarke, 2 Swan, 9; Scott v. Wallace, 3 N. H. 321; Morgan & Harrison v. Reading, 3 S. & M. 366; Comm'rs v. Withers, 29 Miss. 21; *Ex parte* Jennings, 6 Cow. 518.

The charges given and refused in this case manifestly use the word *navigable* in its common, and not in its technical acceptation; and in that sense we will understand it, for the purposes of this opinion.

It is undoubtedly true, as held by this court in Ellis v. Carey, 30 Ala. 725, that all streams below tide-water are, *prima facie*, public; and all above tide-water are, *prima facie*, private, not subject to a public right of floatage upon them.—King v. Montague, 4 B. & C. 598; Angell on Water Courses, 596, § 535; Mayor of Colchester 7 Ad. & E. 33, (53 E. C. L. 339;) Miles v. Rose, 5 Taunt. 705, (1 E. C. L. 240;) Wadsworth v. Smith, 11 Maine, 278; Morgan v. King, 18 Barb. 277.

Bashi creek, being above tide-water, is, *prima facie*, not a navigable stream. The *onus* of proof was, there-

fore, upon the party claiming for it the character of a navigable stream.

[2.] It is difficult, perhaps impossible, to define with precision the fresh-water streams, which are public, or, in the common acceptation of the term, navigable. A reference to the decisions will aid us in ascertaining the principles upon which the question is to be decided, as to the creek mentioned in the bill of exceptions in this case.

The test laid down in the People v. Platt, 17 John. R. 211, of a fresh-water stream, in which the public have an easement for purposes of transportation and commercial intercourse, is their susceptibility of use *as a common passage for the public.* The navigability of the Hudson at Stillwater is placed upon the ground, that it was, *beneficially to the public,* subservient of rafting.—Palmer v. Mulligan, 3 Caines, 318. Lord Hale describes navigable streams as of sufficient depth for *valuable floatage.*—Angell on Water Courses, 596, § 535. In Wadsworth v. Smith, 11 Maine, (2 Fair.) 278, it is said, those streams, which are sufficiently large to bear boats or barges, or to be of *public use* in the transportation of property, are highways by water, over which the public have a common right.

The South Carolina court, while declining to define a navigable stream, said, that that would not be a navigable stream, the natural obstructions of which prevented the passage of any boats whatever.—Cates v. Wadlington, 1 McCord, 583; see Wilson v. Forbes, 2 Dev. Law, 30; Ingram v. Threadgill, 3 Dev. Law, 61. In Tennessee it is held, that the public have an easement in shallow streams, which are of sufficient depth for *valuable floatage,* as for rafts, flat-boats, and, perhaps, small vessels of lighter draft than ordinary.—Stuart v. Clark, 2 Swan, 16; Elder v. Burrus, 6 Humph. 364.

The language of the decision in Munson v. Hungerford, 6 Barb. 370, is: "A stream, to be navigable within the authorities, *must furnish a common passage for the King's people; must be of common or public use* for carriage of boats or lighters; must be capable of bearing up and floating vessels for the transportation of property, con-

ducted by the agency of man. It is not enough that a stream is capable (during a period, in the aggregate, of from two to four weeks in the year, when it is swollen by the spring and autumnal freshets) of carrying down its rapid course whatever may have been thrown upon its angry waters, to be borne at random over every impediment, in the shape of dams or bridges, which the hand of man has erected. To call such a stream *navigable*, is a palpable misapplication of the term."

It is intimated, though not decided, in Brown v. Scofield, 8 Barbour, 239, that the courts will take judicial notice of such streams as are public highways; and in determining whether the Carristo river is navigable, stress is laid upon the fact, *that it had been used as a highway, since the settlement of the country;* and the remark is made, "that these great natural channels and avenues of commerce, whenever they are found of sufficient depth to float the products of the mines, the forests, or the tillage of the country, through which they flow to market, have always been adjudged by our courts to be subject to the right of passage, independent of legislation."

The question in Curtis v. Keesler, 14 Barbour, 511, was whether Calikoon creek was a navigable stream. The proof was, that the tide did not ebb and flow in the stream; that, in its natural state, it was not capable of floating a log; that when swollen by freshets, or the melting of snow, it would bear up a raft, or single logs of timber; that it *had been occasionally* used, for many years, *by a few persons.* Declaring that a stream, to be navigable, must be a *common passage for the King's people;* must be of *public use* for carriage of boats and lighters; must be capable of bearing up and floating vessels for the transportation of property, conducted by the agency of man, the court held, that the stream was not navigable.

In Morgan v. King, 18 Barbour, 277, it was decided, that a stream might be public, although useful only to float single logs without manual guidance; and that a stream, upon which and its tributaries saw-logs, to an *unlimited amount*, would be floated every spring, and for a period of from four to eight weeks, and for the distance

of *a hundred and fifty miles*, and upon which unquestionably *many thousands would be annually transported for many years to come*, has the character of a public stream for that purpose. See, also, Brown v. Chadbourne, 31 Maine, 9; Moore v. Veazie, 32 Maine, 343.

Morgan v. King, *supra*, presented a peculiar case, where the immense forests of valuable timber, contiguous for a great distance to the stream, which flowed along the great slope from the south towards the St. Lawrence, made the creek the means of transportation for the marketable product of the labor and enterprise of a great number of people, throughout a large extent of country. *The number of people* interested in the use of the stream for a particular purpose, the *magnitude* of the *public* interests involved, and the fitness of the stream for the carriage of the peculiar article of commerce of a large section of country, were controlling elements in that case.

Rowe v. The Granite Bridge Corporation, 21 Pick. 344, decides, that a creek, below tide-water, would not be public, unless it was "*navigable to some purpose useful to trade and agriculture.*"

The length of time, for which an appropriation to public use has existed, is prescribed as one of the tests, though certainly not a controlling one, of a navigable stream. Woolrych on Waters, 40: Shaw v. Crawford, 10 Johns. 246. Force is given, in most of the cases, to the consideration, that the stream had or had not been long used for public purposes.—King v. Montague, 4 B. & C. 96. This consideration is entitled to less weight in a new, than in an old country; but the country through which the creek upon the character of which we are passing flows, is not so new as to make it unimportant.

Another inquiry, which is of some importance, in testing the character of a stream, is whether it was omitted from the government surveys.—Ellis v. Carey, 30 Ala. 725.

From the somewhat conflicting authorities which we have examined, we attain the conclusion, that in determining the character of a stream, inquiry should be made as to the following points: whether it is fitted for valuable floatage; whether the public, or only a few individu-

als, are interested in transportation; whether any great public interests are involved in the use of it for transportation; whether the periods of its capacity for floatage are sufficiently long to make it succeptible of use beneficially to the public; whether it has been previously used by the people generally, and how long it has been so used; whether it was meandered by the government surveyors, or included in the surveys; whether, if declared public, it will probably in future be of public use for carriage. And in the application of these inquiries to the facts of a case, it is to be remembered that the *onus probandi* is upon the party claiming that a stream above tide-water is public.

Applying the tests above indicated to this case, we decide, that Bashi creek is not a navigable stream. There is no proof that Bashi creek can be used for any purpose, save the floating of timber. There was no proof that the creek could be used, even for that purpose, for a greater distance than about six or seven miles in a direct line. It had never been used before by any person for transportation in any way. It has never been used since by any person for that purpose. It is not shown that there are large and extensive forests, fitted to afford timber for market, contiguous to the stream; nor is it shown that any great business of transporting timber on it can ever spring up. It does not appear that the public generally, or any large number of persons, will ever use the stream for such purpose. Indeed, the short distance to which the stream can be used, affords a strong argument, that no large number of persons will probably ever use it for floating timber. The stream, even below the mouth of Tallahatta creek, can only be used for floatage in freshets from head-water, or from back-water from the Tombeckbe river. In case of freshets from head-water, it can be used for floating rafts only for a very short time; because the creek, being a short one, runs down very soon. The seasons being unusually dry, it was impracticable, from the spring of 1854, to some time in the winter of '56, to float spars out of the creek; thus showing that, for long periods of time, it is totally useless, even to float logs. The highest estimate

of the aggregate of the brief periods, when it might be used for the short distance for floating rafts and logs on account of freshets and back-water, is three months. The creek is not shown to have been excepted from the government surveys. Upon such evidence, it cannot be held, that Bashi creek is a navigable stream. It is not sufficient to show that a contingency has arisen, or may arise, in which a particular individual can use the stream for a valuable purpose. The public must be interested, before it can become a public highway.

The holding such streams to be public highways, would be productive of great and extensive injury to individuals and the public. A large number of creeks in the State, never thought of as navigable streams, might be used for floating rafts, for as long a time in each year, and, perhaps, for a greater distance, if advantage were taken of every rise, however short in duration. Every mill-dam on any of those creeks, every bridge over them, every water-gap, and every foot-log, could be treated as a nuisance, at the option of any individual, who might think proper to go up the stream and prepare a raft of timber, to await a rise from a freshet, to float his raft down; and he might sue the owners of mills for all damage sustained, in consequence of the interference of the dams. To regard such streams as navigable, could subserve no useful public purpose, and might prove detrimental to the great manufacturing interests of the State, as well as to the public interest in having suitable bridges on the public roads. Moffett v. Brine, 1 Iowa, 348: Varick v. Smith, 9 Paige, 553; 5 Ind. 103.

[3.] When the facts are ascertained, the question whether the stream is a public highway, is a question of law.—Morgan v. King, 18 Barb. 285. Making every intendment in favor of the plaintiff, which would be proper on a demurrer to evidence, we think the law pronounces the judgment, that Bashi creek was not a navigable stream; and we decide, therefore, that the court below erred in refusing to charge the jury, that upon the evidence in this case the creek was not a navigable stream.

[4.] There is no tendency of proof to the conclusion, that the floatage upon the stream has ever been, is now, or ever can be, valuable to the public generally; and while the proof may be conflicting in its description of the stream, there is no conflict as to facts indispensably necessary to make it a navigable stream. In such a case, it is certainly a right of the parties to have from the court a declaration of the legal effect of the evidence, unless some sufficient legal reason for not giving it exists. Knapp v. McBride & Norman, 7..Ala. 29; Hollingsworth v. Martin, 23 Ala. 597; Swift v. Fitzhugh, 9 Porter, 67; Skinner v. State, 30 Ala. 526; Knight v. Bell, 22 Ala. 206; Woolfork v. Sullivan, 23 Ala. 558; Powell v. Williams, 27 Ala. 52; Crum v. Williams, 29 Ala. 446. But the court cannot be required by a party to charge the jury, as to the legal effect of the entire evidence, unless, after the concession of all points upon which there was a conflict of evidence, and of all adverse inferences from the evidence, he is entitled to the charge. We do not deny, that no error could be predicated of a refusal by the court to charge the jury, as to oral testimony, that there was no evidence of any particular fact, because the presiding judge did not remember whether there was or not.—Knox v. Fair, 17 Ala. 503; Lancaster County Bank v. Allbright, 21 Penn. State, 228. Whether a presiding judge could legally excuse himself for the omission to give such a charge, upon the ground that he did not remember the evidence, it is not necessary for us to decide, because no such ground of refusal was assumed in this case, and the legitimate inference from the bill of exceptions is, that its refusal was a rejection of the legal proposition involved.

[5.] The plaintiff in this case claims damages, not only upon the ground that Bashi creek was a navigable stream, but that he had a right resulting from contract to float his spars down it. It is a debated point between the counsel, whether the contract that the plaintiff might float his spars through the lands of the defendant, was a mere license, or the transfer of an interest in land, within the statute of frauds. A license is defined by Kent to be

an authority to do a particular act, or series of acts, upon another's land, without possessing any estate therein. 3 Kent's Com. 592; Riddle v. Brown, 20 Ala. 412. The distinction between an easement within the statute of frauds and a license, is sometimes difficult of discernment; but there can be no doubt, that the privilege of floating the plaintiff's spars upon a private stream of the defendant, which does not involve the holding or occupation of the real estate, is within the definition of a license. Indeed, the books abound in cases, where privileges on land, of a much more fixed and lasting character, have been held to be mere licenses.—Wood v. Ledbetter, 13 M. & W. 837; Browne on Statute of Frauds, 30, §§ 27–28; 2 Platt on Leases, 23; Dubois v. Kelly, 10 Barb. 496; Cook v. Stearns, 11 Mass. 537; Davis v. Townsend, 10 Barb. 334; Jamison v. Milliman, 3 Duer, 255; Wilson v. Chalfant, 15 Ohio, 248; Le Fevre v. Le Fevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Angell on Water Courses, chap. 8.

[6.] It is true that parol licenses, unexecuted, are generally, though not universally, held to be revocable, even when they are made upon a valuable consideration. The question in this case is not whether the license was revocable before it was acted on: it is whether the license can be revoked after it had been obtained for a valuable consideration, and the plaintiff, acting under it, had conveyed his spars to the creek, and placed them in it, ready to be carried down the stream by the anticipated rise, when the revocation would work great injury to the plaintiff, and when the exercise of the authority conferred would involve no occupancy of the defendant's land. There are, we admit, some authorities which would allow a revocation of the license, even under these circumstances; but we are not willing to follow them. It would be against all conscience to permit the defendant to revoke his license, after the plaintiff had acted upon it so far that great damage must necessarily result from the revocation. Every reason upon which the doctrine of estoppels *in pais* rests, applies. It is a plain case, where one party has, by his conduct, induced another to act in

such a manner, that he cannot be allowed to retract without serious injury to that other person. We think a denial of the right of revocation, under such circumstances, is consistent with justice and right, supported by the analogies of the law, and many respectable decisions.—Rerick v. Kern, 14 S. & R. 267; Nettleton v. Sikes, 8 Metcalf, 34; Angell on Water Courses, 5 div. of chap. 8; Hall v. Chaffee, 13 Vermont, 150; Bridges v. Purcell, 1 Dev. & Bat. (N. C.) 492; Sheffield v. Collier, 3 Kelly, (Ga.) 82; Le Fevre v. Le Fevre, 4 S. & R. 241.

[7.] We think, upon the averments in the declaration, Bashi creek would be a navigable stream. The complaint contains, therefore, a cause of action predicated upon an alleged interference with, and obstruction of, the plaintiff's right to navigate a public stream. This cause of action is in trespass on the case. The complaint also contains a cause of action for an infringement by the defendant of the plaintiff's right growing out of a contract with the defendant, and a breach of the defendant's duty under that contract. This was, also, a cause of action in case.—Myers v. Gilbert, 18 Ala. 467; Wilkinson v. Mosely, 18 Ala. 288. The declaration, therefore, contains two complete causes of action.

The judgment of the court below is reversed, and the cause remanded.