In 1957 six joint owners of a private drive leading to their respective river-front lots executed an instrument, giving the right to use the northernmost 900 feet of the drive to Retired Circuit Court Judge and Mrs. Robert E. Hodnette, Jr. The document was prepared by Judge Hodnette, who was then a practicing attorney. It provided that the Hodnettes would be granted the personal right to use the road "as a road for ingress and egress to and from said property owned by [the Hodnettes] and that portion on which they contemplate building a home." The Hodnettes gave one dollar in consideration for the use of the road. They also agreed to "contribute pro rata to the upkeep" of the road. Judge Hodnette wrote a letter to the landowners, describing the Hodnettes' intent in securing use of the private drive. That letter contained the following pertinent information:
 "As you know, I have discussed with most of you the question of giving my wife and me the right to use a portion of your road which enters onto Venetia Road and I have received expressions from most of you to the general effect that you would probably be willing to do so on certain conditions, including such matters as not having driveways opposite existing driveways, upkeep and making the use personal to my wife and me.
 "In the first place, I will frankly state that we contemplate starting construction on our home in the very near future and if you are agreeable to granting us the right to use a portion of the road it will save us considerable expense in building a parallel road. Naturally, we desire to make the advantages mutual in every way possible.
". . . .
 "I call your attention further to the fact that under this instrument we have expressly stated that the right of use is granted to my wife and me personally, and that there is an exclusion in the instrument stating that it shall not be considered as granting an easement to run with my land. The effect of these two provisions is to ensure that in the event we sold all of the property the right of use of the road would not follow the subsequent owners; if we sold any property the purchaser of the portion sold would not have the right of use of the road. The intention, of course, here is that we are granted the right to use personally in connection with the ownership and occupancy of our home by us."
The Hodnettes have used the road continuously for 37 years. Since 1957 their usage of the road has extended beyond the 900 feet referred to in the document. The right to use the road beyond the 900 feet was based upon verbal permission from the landowners. Since 1957 the entrance to the Hodnettes' property from the private road has changed three times. The entrance to the Hodnettes' property at the time of the hearing was beyond the 900 feet expressly granted in the document. The Hodnettes have used this entrance for approximately 25 years. The Hodnettes have expended approximately $2,000 on the upkeep of the road.
Approximately six years ago, the Hodnettes granted the Mobile Water and Sewer Board an easement down the length of their property to provide water and sewerage service for all the homes served by the private road. In exchange for granting the easement, the Water and Sewer Board put a gravel drive on the Hodnettes' property, *Page 550 
which parallels the private road. At the same time the Water and Sewer Board also widened and repaved the private road at issue.
In 1993 the Hodnettes subdivided their property into three lots and gave their daughter one lot, on which to build a home. The gravel drive gives access to all three lots, including the Hodnettes. The Hodnettes testified that they have no intention of selling the third lot. They subdivided the property into three lots only because it was required by the City in order for the daughter to obtain a building permit.
Judge Hodnette testified that only he and his wife and their invitees use the private road. His daughter does not. They concede that they can gain access to their home via the gravel drive on their property and do not absolutely need to use the private road. However, the private road is in better condition and is much more convenient for the Hodnettes, who are retired senior citizens, than the gravel drive.
In 1994 Lee Shearer, one of the landowners, dug a ditch across the entrance to the Hodnettes' home, making it impossible for the Hodnettes to gain access to their home from the private road. The entrance was located across the private road from the property of Shearer. Shearer obstructed the entrance without the concurrence of the other co-owners of the road.
Thereafter, the Hodnettes filed an action in the Circuit Court of Mobile County, requesting a temporary restraining order and further, upon final hearing, a permanent injunction prohibiting Shearer from damaging the entrance and requiring her to repair the damage done to it. The trial court granted the temporary restraining order. Following a hearing on the Hodnettes' application for a permanent injunction, the trial court entered an order in favor of the Hodnettes. That order is as follows:
 "The Plaintiff admittedly does not claim an easement running with the land or rights by prescription, but alleges that by virtue of the agreement produced as Exhibit 'B' in evidence that he and his wife are entitled for their lifetimes to use the roadway in question and the portions thereof which he is currently using. It is true, as the Defendant contends, that the agreement does not extend to that portion of the roadway used by the Plaintiff, but the Plaintiff has testified, and the Court is satisfied, that the Plaintiff many years ago moved the access to his residence at the request of the Defendant, and this was done at the sufferance of the remaining signatories to the agreement produced as Exhibit 'B'.
 "The Plaintiff has continued to use that portion of the roadway for over twenty-five (25) years and the objection only now comes as a result or after the Plaintiff has conveyed a portion of his property to his daughter and son-in-law. The Plaintiff does not contend that those persons have the right to use the roadway in question, and a separate roadway has been constructed for that purpose.
 "The Defendant is apparently the only party who has taken any overt action toward preventing the Plaintiff from continuing to use the roadway which he has used for many years. This Court is satisfied that the Defendant has waived any right to claim that the Plaintiff has exceeded his authority under the agreement, and that the Plaintiff and his wife are entitled to continue the use of the existing roadway which has been obstructed by the Defendant. It is therefore
 "ORDERED that the Defendant, within thirty (30) days from the date of this order, remove any and all obstructions to the Plaintiffs' use of that portion of the roadway which she has obstructed, and the Defendant is permanently enjoined from barring the Plaintiff or his wife from using said roadway during the period of their lives."
Shearer appeals from the trial court's order. This appeal is before this court pursuant to § 12-2-7(6), Code 1975.
Initially, we must determine what right, if any, the Hodnettes possess in the private road. Shearer alleges that the 1957 document conveyed to the Hodnettes a license to use the private road. She concedes that oral permission extended the Hodnettes' original *Page 551 
grant to include use of the private road beyond the original 900 feet granted. She contends that the Hodnettes no longer have a right to use the road because she has withdrawn her permission for them to do so. The Hodnettes, on the other hand, maintain that the 1957 document, and the oral extension of that document, created an enforceable easement which is not revocable during their lives.
Traditionally, easements could be created only by deed, by prescription, or by adverse use. Cleek v. Povia, 515 So.2d 1246
(Ala. 1987). Several additional means of establishing easements were outlined in Helms v. Tullis, 398 So.2d 253 (Ala. 1981): (1) by express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by contract, and (6) by reference to boundaries and maps.
The Hodnettes maintain that the 1957 document and the oral extension created a limited easement by "express conveyance" or by "contract." (The Hodnettes did not take this position at the hearing. In fact, the trial court found in its order that "[t]he Plaintiff admittedly does not claim an easement running with the land or rights by prescription. . . .")
The 1957 document provided: "It is further understood and agreed by and between the parties that the right to use said property as a road shall be considered a personal right and this instrument shall not be considered as granting an easement to run with the said described land. . . ." We find from the face of the document that the parties' intent was to convey a "license" to the Hodnettes for their personal use of the private road. The document is not ambiguous. It states this intent in plain and simple language. Johns v. First AlabamaBank, 612 So.2d 1235 (Ala.Civ.App. 1992).
At common law the term "license" denoted the doing of an act, i.e., the giving of one's consent. Camp v. Milam, 291 Ala. 12,277 So.2d 95 (1973). Its revocability is grounded on this concept. "Since the granting of a license is the giving of one's permission to another to do a certain thing . . ., this license is revocable at the will of the licensor, simply by the withdrawing of his permission." Camp. A license does not pass any interest in the property to the licensee. It only makes an action lawful, which without a license would have been unlawful. Camp.
Not all licenses, however, are revocable at the will of the licensor. "A license coupled with an interest" or an "executed license" are exceptions to the general rule of revocability.Rhodes v. Otis, 33 Ala. 578 (1859). In Camp, the supreme court explained the exception in the following manner:
 "Thus, when expenditures contemplated by the licensor have been made by the licensee, the license, having been acted upon so as to greatly benefit the licensor, is said to have been executed. An executed license, for the reasons founded upon the equitable principle of estoppel, becomes irrevocable and confers upon the licensee a substantive equitable right in the property."
We find that the exception to the general rule applies to the facts of this case. The 1957 document and the oral extension gave the Hodnettes a license to use the private road for ingress and egress to and from their property. The Hodnettes expended money for the upkeep of the road. The easement across their property, which they granted to the Water and Sewer Board, also made it possible for the private road to be paved and widened at no expense to the landowners. We find that the Hodnettes' expenditures and their grant of an easement to the Water and Sewer Board conferred benefits upon the landowners, thus making the license to use the private road an executed, irrevocable license.
Although irrevocable, the license during the lifetime of the Hodnettes is by its nature personal. It is not an interest which runs with the land, nor can it be assigned, conveyed, or inherited. The use of the private road under this license may never ripen into an easement by prescription, however long continued. Camp. Although Shearer has no right to enjoin the Hodnettes from using the private road, the Hodnettes' use remains that use as contemplated by the parties in 1957. *Page 552 
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.