# Peters *v.* New Orleans, Mobile & Chattanooga Railroad Company.

## *Action for Damages to Land by Erection of Railroad Bridge.*

1. *Error without injury, in charge to jury; complaint demurrable, but amendable.*—Where the plaintiff below is the appellant here, and assigns as error the charge of the court to the jury, this court will not apply the doctrine of error without injury in the charge, on account of defects in the complaint, which, if they had been specified on demurrer, might have been remedied by amendment.

2. *What is navigable stream.*—Under the evidence stated in this record, the middle fork or prong of Dog river, in Mobile county, is not a navigable stream, in that sense which denies to the legislature the power to authorize the construction of a railroad bridge across it, even though the navigation of the stream is thereby entirely destroyed. Congress has never asserted over it the power to regulate commerce, nor mentioned it among the navigable streams over which the defendant railroad company, whose road is declared a post-route, is required to maintain drawbridges; it did not check or control the United States surveyors, who ran their lines across it without deflection; it is useful for valuable floatage only one and a half miles above the defendant's bridge; and the plaintiff in this action is the only person who is shown to have ever used it as a highway, or who has any interest in keeping it open as such.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. JAMES Q. SMITH.

This action was commenced on the 1st March, 1870. The complaint was as follows: "The plaintiff, Frederick Peters, claims of the defendant, the New Orleans, Mobile & Chattanooga Railroad Company, thirty thousand dollars, as damages, in an action of trespass on the case; for that whereas the plaintiff, before and at the time of committing the wrongs herein complained of, was, and from thence hitherto has been, and still is lawfully possessed in his own right, in fee simple, of the following lands," &c., describing them; "yet the defendant, heretofore, to-wit: on the first day of April, A. D. 1869, and on divers other days after the said day, and before the commencement of this suit, erected and procured to be erected a certain embankment, on and near the lands aforesaid, in a manner so improper and injurious to the plaintiff that, by reason thereof, the natural flow of water from large portions of said lands has been prevented, and large quantities of water have thereby been backed on said lands, rendering them unfit for cultivation, and unhealthy, and unsuitable for habitation; spreading malaria through the atmosphere, in and around the family dwelling of the plaintiff, and subjecting him and his family to disease produced thereby; and whereby the plaintiff has been, and still is, incommoded in the passing of himself, his stock, and laborers, from one part of his said lands to another; and has been, and still is, subjected to great additional labor and expense in making and keeping up his fences. And heretofore, to-wit, on the day and days aforesaid, the defendant has further erected and caused to be erected, near to the lands aforesaid, a bridge over Dog river, in a manner so improper and injurious to the plaintiff that, by reason thereof, and of the embankment aforesaid, the plaintiff has been, and still is subject to great additional labor and expense, in transporting bricks, lumber, wood, timber, and other agricultural products, from one part of his lands aforesaid to another part, and to market. To the plaintiff's damage thirty thousand dollars."

There was no demurrer to the complaint. The defendant pleaded "not guilty, *payment*, accord and satisfaction." The cause was tried on issue joined, and the jury, under the charge of the court, returned a verdict for the defendant. "On the trial," as the bill of exceptions states, "the plaintiff introduced evidence tending to show that the middle prong of Dog river was navigable by steamboats and flat-boats, for carrying wood, above the site of the railroad bridge across that river, until said bridge was built; that, before said bridge was built, he had two flat-boats, his own property, employed in the business of carrying light-wood, taken from

his own land near said river, above said bridge, down said river, and up the bay of Mobile, to the city of Mobile, to be there sold; that said bridge so obstructed the navigation of said river, as to prevent his flat-boats passing up or down said river in carrying light-wood; that, in order to get his light-wood to a landing below said bridge, it will be necessary to transport it by wagon two and a half miles further; that this additional expense of transportation would consume all the profits of the business; that there was a large supply of light-wood on his lands, and he had a contract for supplying the mail line of steamers between Mobile and New Orleans with light-wood; and that his light-wood business yielded him, on an average, ten dollars per day. The plaintiff introduced evidence, also, tending to prove that the channel of said river, at and above said bridge, is fifteen feet deep; that it was navigable for steamboats and flat-boats for light-wood one mile and a half above said bridge; that a small flat-boat lighter, sixteen feet wide, can not pass by said bridge; that the open space under the bridge is not wide enough to admit more than two or three saw-logs to pass abreast; that the plaintiff, before the building of said bridge, was carrying on a profitable business in light-wood, which has been entirely broken up by the said obstruction of the navigation of the middle prong of Dog river. It was proved by a witness introduced by defendant, that said bridge was constructed according to the plan of the defendant's engineer, and under his inspection. It appeared that, in the survey of lands in that place, the section lines are made to cross this branch of Dog river, and that the United States government has not made fractional sections on this river. The defendant read to the jury, among other things, an instrument executed by the plaintiff," dated the 21st November, 1867, by which he granted to the defendant, for the purposes of its road, a strip of land one hundred feet wide on each side of the track as located through his lands.

"The court charged the jury as follows: 'If you find, from the evidence, that the river described in the complaint as Dog river is a navigable river of the United States, situated within the State of Alabama; and that the defendant's railway company is authorized, by an act of the congress of the United States, to pass over Dog river, by erecting a bridge, without specifying the kind of bridge or way by which to pass over; and that the defendant (the railway company), by the erection of the bridge or way over said river, exercised only the right given by said act of congress, and has erected the bridge or way properly, and without unnecessary obstruction, under the instructions and plan of an

engineer; then your verdict will be for the defendant.' To this charge the plaintiff excepted."

The errors now assigned are: "1. The court erred in the charge given to the jury. 2. The court erred in submitting a question of law to the jury. 3. The court erred in charging the jury to find the legal effect of an act of the United States congress. 4. There is error shown in the bill of exceptions."

Boyles & Overall, for appellant.—The defendant had no lawful authority to construct a bridge over Dog river without a draw in it, to enable persons to carry on commerce and navigation on said river; and no such authority was conferred on it by the act of congress, or by any of the acts of the legislature of Alabama. The charter of the corporation, granted by the general assembly of Alabama, authorizes it to construct its road across any stream, river, highway, &c., but expressly provides: "But the said corporation shall preserve the stream, water-course, river, street, highway, turnpike, or canal thus intersected, touched, or crossed, so as not to impair its usefulness unnecessarily; or, if temporarily impaired by said corporation in constructing said road, the corporation shall restore the same to its former state, or to such a state as not to have unnecessarily or materially impaired its usefulness and convenience to the public."— Pamphlet Acts 1866-7, p. 6, § 13. The act of congress, approved March 2d, 1868, authorized said corporation to build and construct bridges across the navigable rivers of the United States, "in accordance with this act and the laws of the several States through whose territory the same shall pass; and such railroad and bridges, when constructed, shall be deemed, and recognized, and known as lawful structures and a post-road, and are hereby declared as such;" and a proviso is added, requiring the erection of draw-bridges across East Pascagoula river, the bay of Biloxi, and the bay of St. Louis. The State has not authorized the corporation to destroy the navigability of Dog river; and if this had been attempted, the act would have been in violation of the constitution of Alabama, which declares (Art. 1, §26) "that navigable waters shall remain forever highways;" while the same declaration is, in words almost identical, contained in the act which admitted Alabama into the Federal Union. The plain meaning of the act of congress is, that bridges are to be constructed and maintained in strict accordance with the State laws; and the State law shows an unequivocal intention to guard and preserve the navigability and usefulness of all water courses intersected by the railroad.—13 Howard, 518;

6 McLean, 72, 209, 237; 5 Ind. 13; 13 Wallace, 179; 1 H. & M. 401.

Has congress the constitutional power to pass an act destroying the navigability of a river or stream of the United States? It has power, under the constitution, to regulate commerce with foreign nations, and among the several States; and the power to regulate does not embrace the power to destroy.—13 Wallace, 179; 18 Howard, 421; Angell on Highways, 61. It may be questioned whether Dog river is a public navigable river of the United States: it is rather a public navigable river lying wholly within the State of Alabama.—10 Wallace, 557; 11 Wallace, 411. The court will take judicial notice of this fact, if it does not clearly appear from the bill of exceptions.—3 Dallas, 397; 7 Peters, 342.

The charge of the court is clearly erroneous, in submitting to the jury the determination of the legal effect of the act of congress, which was a question for the court to decide.— 17 Ala. 540; 19 Ala. 321; 22 Ala. 699; 26 Ala. 371; 27 Ala. 259.

· Geo. N. Stewart, with whom was Alex. McKinstry, *contra.*
1. The complaint does not state a substantial cause of action. It does not aver that the stream was navigable; nor that the plaintiff owned lands fronting on it; nor how far off his land was from the bridge; nor in what respect the bridge was improperly built. In the absence of such averments, the plaintiff has no cause of action, and he was not injured by any erroneous ruling of the court.

2. If the stream was navigable, and the defendant's bridge obstructed its navigation, it would be a public nuisance, but not the subject of a private action for damages. The question of nuisance *vel non* can only be tried in a suit at the instance of the attorney-general, in the name of the State, that it may be definitely settled.— *Hoole & Paullin v. Attorney-General,* 21 Ala. 194; *O'Brien v. N. & W. Railroad Company,* 17 Conn. 372; *Bigelow v. Hartford Bridge Co.,* 14 Conn. 578; *Dover v. Portsmouth Bridge,* 17 N. H. 201; *Getty v. Hudson River Railroad Co.,* 21 Barbour, 627; 23 N. Y. 218; 18 N. Y. 155; 34 N. J. 283. The plaintiff does not show any special injury to himself, which might entitle him to raise the question.—17 Conn. 372; 34 N. J. 280.

4. Congress has the paramount control of the navigable streams of the country, and may authorize the construction of bridges over them, in the interests of commerce and the public necessities, as settled in the case of the *Clinton Bridge,* 10 Wallace, 454. See, also, *Gilman v. Philadelphia,* 3 Wallace, 729. The act of congress expressly authorized the

construction of bridges over navigable streams by the defendant, and specified the three points at which draw-bridges should be erected and maintained; thereby excluding, by necessary implication, the necessity of erecting them elsewhere.

2. The Alabama charter of the railroad company gives it the right to cross all streams, and makes no special requisition of draw-bridges. If loss ensue to any one from the exercise of rights under such legislative grant, it is *damnum absque injuria*, and no action lies.— *Gould v. Hudson River Railroad Co.*, 2 Selden, 522; 20 Texas, 70; 17 N. H. 270; 46 Penn. St. 112; 6 Barr, 379; *Commonwealth v. Taunton*, 7 Allen, Mass 309; 41 Penn. St. 147; 42 Penn. St. 219.

5. On the evidence, Dog river was not a navigable stream; and the court might have instructed the jury, if they believed the evidence, they must find for the defendant. In submitting to the jury the decision of a legal question (if that be the correct construction of the charge), which the court ought to have decided against the plaintiff, he certainly was not injured.

STONE, J.—The present record raises no question on the sufficiency of the complaint. It is here contended, that the complaint sets forth no sufficient cause of action; and we are asked to affirm the judgment on that account, notwithstanding there may be error in the rulings of the Circuit Court. If there had been a demurrer to the complaint in the court below, it is probable that demurrer would have been sustained. The plaintiff, however, would have been allowed to amend his complaint, and might have obviated the objections to it. Such practice would secure to the plaintiff only his clear legal rights. We can not apply the doctrine of error without injury to such a question as this, unless it clearly appears to us that the defect is such that it can not be remedied. This record does not enable us· to affirm that the complaint can not be so amended, as to state a substantial cause of action.

2. The complaint fails to aver that Dog river is a navigable stream. It also fails to aver that plaintiff, or any one else, was accustomed to use it as such; and the plaintiff fails to aver that he had any timber to float, or transport to market, or otherwise. The sufficiency of the complaint, however, is not before us. What constitutes a navigable stream has been frequently before this court.—See *Bullock v. Wilson*, 3 Por. 436; *Ellis v. Carey*, 30 Ala. 725; *Rhodes v. Otis*, 33 Ala. 578. The charge excepted to fairly left the question to the jury, whether or not Dog river is a navigable stream. It

apparently submitted to the jury the question of the proper construction of the act of congress. If this be the proper reading of the charge, then the Circuit Court erred in that particular. The construction of the act of congress was a question of law, and should have been given by the court, without hypothesis.—1 Brick. Dig. 337, § 25. We suppose, however, that the presiding judge intended, himself, to construe the act of congress. We shall, therefore, treat the charge, as if it instructed the jury, that, notwithstanding they may find that Dog river is a navigable stream, still the defendant railway company had the right, under the act of congress, to erect a bridge across it, without reference to the kind of bridge; and if the defendant, properly, and without unnecessary obstruction, erected the bridge, under the instruction and plan of an engineer, then the verdict should be for the defendant. The substance of this charge, thus construed, is, that the act of congress authorized the railroad company to obstruct the navigation of Dog river, by erecting across it a bridge without a draw, or moveable section.

The act of congress, approved March 2, 1868 (15 Statutes at Large, 38), authorized and empowered the defendant corporation " to construct, build, and maintain bridges, over and across the navigable waters of the United States, on the route of said railroad, between New Orleans and Mobile;" and declared that "said railroad, and its bridges aforesaid, when constructed, completed, and in use, in accordance with this act, and the laws of the several States through whose territory the same shall pass, shall be deemed, recognized, and known as lawful structures and a post-road, and are hereby declared as such;" with a proviso that the defendant corporation should construct draw-bridges over East Pascagoula river, the Bay of Biloxi, and the Bay of St. Louis.

In the act incorporating the defendant corporation, approved November 24, 1866 (Pamph. Acts, 16), it is provided as follows: "Sec. 13. That said corporation are authorized to construct their said railroads, or any part of the same, across, along, or upon any stream of water, water-course, river, bay, inlet, street, highway, turnpike, or canal, which the route of its said railroad may intersect or touch; but the said corporation shall preserve the stream, water-course, river, street, highway, turnpike, or canal, thus intersected, touched, or crossed, so as not to impair its usefulness unnecessarily; or, if temporarily impaired by said corporation, in constructing said roads, the corporation shall restore the same to its former state, or to such a state as not to have unnecessarily or materially impaired its usefulness and convenience to the public."

The act of congress, "To enable the people of Alabama Territory to form a constitution and State government," approved March 2, 1819, contains, as one of the propositions submitted by congress to the people of the Alabama Territory, "for their free acceptance or rejection," the following: "That all navigable waters, within the said State, shall forever remain public highways, free to the citizens of said State and of the United States, without any tax, duty, impost, or toll therefor, imposed by the said State." This proposition was accepted by the people of Alabama Territory, and thus became part of the compact between the United States Government and the people of Alabama. This provision was adopted from the ordinance of 1787. See a discussion of that ordinance, particularly this provision of it, in *Hogg v. Zanesville*, 5 Ohio, 410; *Spooner v. McConnell*, 1 McL. 337; Cooley's Const. Lim. 25, and note.

"The middle prong of Dog river," as it is styled in the bill of exceptions, is shown to have sufficient depth and volume of water for valuable floatage, in extent only a mile and a half above the bridge, which it is alleged obstructed the navigation. The plaintiff in this action is the only person who is shown to have ever used the stream as a highway, or who has any interest in keeping it open as such. It is not shown what length the stream has below the bridge, before it enters into the bay of Mobile. The government surveys were not controlled or checked by its presence, but lines were surveyed across it, making no fractions. If the lands have been sold, as we suppose they have, the bed of the water-course is private property.

In *Ellis v. Carey*, 30 Ala. 728, speaking of "Murder Creek," whose navigability *vel non* was the subject of inquiry, we used this language: "It" [the stream] "does not appear to be of '*common or public use*' for carriage of boats and lighters. In the survey of the public lands of the United States, it was treated as not navigable; for the government surveyors made no fractional sections upon its margin, but ran the land lines entirely across the stream. In that survey, it was treated as land merely, and as much the subject of sale and *private* ownership and use, as any other part of the tract of land on its margin."

In *Rhodes v. Otis*, 33 Ala. 596, we said: "In determining the character of a stream, inquiry should be made as to the following points: whether it is fitted for valuable floatage; whether the public, or only a few individuals, are interested in transportation; whether any great public interests are involved in the use of it for transportation; . . . . whether it has been previously used by the people generally, and how

long it has been so used; whether it was meandered by the government surveys, or included in the surveys."

In each of the cases from which we have quoted above, this court declared, as matter of law, that, under any view of the evidence before the court, the streams then under discussion were not navigable water-courses.

Mr. Cooley, speaking on this subject (Const. Lim. 590), says: "The capacity of a stream, which generally appears by the amount, nature, importance, and necessity of the business done upon it, must be the criterion. A brook, although it might carry down saw-logs for a few days, during a freshet, is not therefore a public highway. But a stream, upon which and its tributaries saw-logs to an unlimited amount can be floated every spring, and from a period from four to eight weeks, and for the distance of one hundred and fifty miles, and upon which unquestionably many thousands will be annually transported, for many years to come, if it be legal so to do, has the character of a public stream *for that purpose*. So far, the purpose is useful for trade and commerce, and to the interests of the community."

In the case of *Wilson v. Blackbird Creek Marsh Company*, 2 Pet. 245, the stream under discussion was very like the one shown in this record, with the exception that its length is not shown. The question was, the right of the State to authorize a private corporation to obstruct it. The court, Ch. J. MARSHALL delivering the opinion, decided that the State could constitutionally confer such power.

The cases of *The Daniel Ball*, 10 Wall. 557, and *The Montello*, 20 Wall. 430, are valuable discussions of what constitutes a navigable water-course. See, also, Angell on Highways, 41.

The cases of *Pennsylvania v. Wheeling Bridge Co.*, 18 How. 421, and *The Clinton Bridge*, 10 Wall. 454, assert that "the power of congress to regulate commerce includes the regulation of intercourse and navigation, and consequently the power to determine what shall or shall not be deemed, in judgment of law, an obstruction of navigation." In the case cited from 2 Peters, 245, *supra*, substantially the same power was accorded to the several States, over streams within their borders, in the absence of the exercise by congress of its constitutional power to regulate commerce between the States, &c.

Mr. Cooley in his work on Constitutional Limitations, 592, says: "The States may authorize the construction of bridges over navigable waters, for railroads, as well as for every other species of highway, notwithstanding they may, to some

extent, interfere with the right of navigation. If the stream is not one which is subject to the control of congress, the State law permitting the erection can not be questioned on any ground of public inconvenience. The legislature must always have power to determine what public ways are needed, and to what extent the accommodation of travel over one way must yield to the greater necessity for another."

The entire doctrine of the power of congress, and of State legislatures, to authorize the obstruction of navigable water-courses, is part and parcel of what is known as eminent domain. It is part of the sovereignty, to be exercised or withheld for the public welfare. What will best promote the interests of the public, must, in a great degree, be left to the wisdom and discretion of the legislature. When it is exercised, one right or privilege of the public is taken away, or impaired, that another, considered of greater value, may be conferred and fostered. This power and discretion, within certain bounds, should be, and are, lodged in the sovereign, as *parens patriæ*. Without it, the power of the government for good would be greatly restricted, and it could not keep pace with the wonderful discoveries of the present century. We say nothing at this time of the duty of the government to make compensation, when private property is taken for public use. The bridge is not shown to be on plaintiff's land, and hence that doctrine has no application to this case.

Three significant facts, we think, show that the general government does not regard the "middle prong of Dog river" as a navigable stream : first, in the government survey, no deflection of lines, or fractional sections, were made on its borders, but the stream was embraced in the survey, and treated as land ; second, congress has not asserted, over this stream, its power to regulate commerce ; and, third, while the act of congress, declaring the defendant corporation a post-road, and granting to it the right to construct bridges over the navigable waters crossed or touched by its route, expressly requires the corporation to construct and maintain draw-bridges over East Pascagoula river, the Bay of Biloxi, and the Bay of St. Louis, it makes no mention whatever of Dog river.—Section 15, U. S. Stat. at Large, 38. *Inclusio unius est exclusio alterius.*

Under the principles above declared, and under the extremest inference that can be drawn from the evidence favorable to appellant, we hold, that the "middle prong of Dog river" is not a navigable stream, in that sense which denies to the legislature of Alabama the power to authorize the erection of a railroad bridge across it, even though, in so

[Good v. Jones.]

doing, such navigation as the stream affords is entirely destroyed. The charge of the Circuit Court, excepted to, is not technically in accordance with these views; but, in no event, could it work injury to appellant.

The judgment is affirmed.