# Walker *v.* Allen.

## *Bill in Equity for Injunction against Obstruction of Navigable River.*

1. *Injunction against obstruction of navigable river.*—The obstruction of the navigation of a public, navigable river, is a public nuisance, which a court of equity will enjoin and restrain at the instance of a citizen who is suffering, or will suffer irreparable injury.

2. *What streams are navigable.*—All tidal streams are, *prima facie*, public and navigable; and all streams above tide-water, not treated as navigable in the surveys made under the authority of the United States, are, *prima facie*, private, not navigable, and not subject to a public right of floatage.

3. *Same; question of law and fact.*—Whether a stream is navigable or not, is a mixed question of law and fact; but, when the facts are ascertained, it becomes a question of law.

4. *Same; judicial knowledge.*—The court judicially knows that there are no tidal streams in Jackson county; and Paint-Rock river is, *prima facie*, not a public, navigable stream.

5. *Same; burden of proof, and sufficiency of averments.*—When a party claims that a stream above tide-water, which was not treated as navigable by the United States surveyors, is in fact public and navigable, the *onus* of proof rests on him; and he must also state facts from which the court can draw the conclusion that the stream is navigable. An averment in the bill that the stream "is a navigable river," is merely the statement of a legal conclusion; and, coupled with the additional averment that complainant has used it, for the floatage of saw-logs, for a period of eighteen months before the filing of his bill, without more, is not sufficient to show that the stream is navigable.

6. *What constitutes navigable stream.*—Every stream which, in its

Vol. LXXII.

natural state, and with its ordinary volume of water, is capable of being used for the purposes of commerce, for the transportation of the products of the fields, forests or mines on its banks, in a marketable condition, is public for the purposes of navigation; and it is not necessary that the ordinary state of the waters should render them navigable continuously at all seasons of the year.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. N. S. GRAHAM.

The appeal in this case is sued out from a decree overruling a demurrer to the bill, and also overruling a motion to dissolve the injunction and dismiss the bill for want of equity. The opinion states all the material facts.

R. C. HUNT, and ROBINSON & BROWN, for appellant.

L. P. WALKER, contra. (No briefs on file.)

·BRICKELL, C. J.—The original bill, filed by the appellee, seeks an injunction restraining the defendant from constructing a boom across a stream in Jackson county, known as *Paint-Rock* river. It is not averred that from the construction of the boom any injury will result to the property, or to the rights of property of the complainant; that he owns lands on or adjacent to the stream, which will be overflowed; or that there will be a diversion of the flow of the water from its natural current, which will cause him detriment. The *gravamen* of the complaint is, that the navigation of the stream will be obstructed, and the complainant hindered in its use for the floatage of saw-logs from points above, to a saw-mill on the stream below the boom. If the stream is a navigable river—a public highway, open and free to the reasonable uses of all citizens for passage or transportation—the obstruction of its navigation is a public nuisance, which a court of equity will interfere to prevent or restrain, at the instance of a citizen who is suffering, or will suffer, special, irreparable injury from its erection or continuance.

The first question presented by the demurrers is, whether it appears from the allegations of the bill that the stream is a navigable stream, or river, upon which the public have a right of way. The tests by which it is determined whether a stream is navigable, subject to public use, have been distinctly stated in several of our decisions.—*Bullock v. Wilson*, 2 Port. 436; *Ellis v. Carey*, 30 Ala. 725; *Rhodes v. Otis*, 33 Ala. 578; *Peters v. N. O., M. & C. R. R. Co.*, 56 Ala. 528. It is not the ebb and flow of the tide, which, as in England, constitutes the usual, or, it may be said, any test at all of the navigability of waters, by which we mean their subjection to public use. The

[Walker v. Allen.]

test is the adaptability of the waters to the purposes of navigation; whether they are, or in fact have been, used by the public, or are capable of being used, in their natural condition, as highways for commerce; for trade and travel; for the transportation of the products of the country, of its industries, of its fields, forests, or mines, in the customary modes of such transportation. All tidal streams are, *prima facie*, public and navigable; all streams above-tide-water, if in the survey of the public lands by the United States they have not been treated as navigable, fractional sections made upon their margin, and the bed reserved from grant or sale, are *prima facie* private—not navigable, and "not subject to a public right of floatage upon them." Upon the party claiming for such streams the character of public and navigable, rests the *onus probandi*, and the duty of stating the facts from which the court can draw the conclusion that the stream or water is of the character claimed for it.

When the facts are ascertained, whether a stream or water is navigable, is a question of law. The whole question is a mixed question of law and fact.—*Rhodes v. Otis, supra.* In this case, the court said; "In determining the character of a stream, inquiry should be made as to the following points: whether it is fitted for valuable floatage; whether the public, or only a few individuals, are interested in its transportation; whether any great public interests are involved in the use of it for transportation; whether the periods of its capacity for floatage are sufficiently long to make it susceptible of use beneficially to the public; whether it has been previously used by the people generally, and how long it has been so used; whether it was meandered by the government surveyors, or included in the surveys; whether, if declared public, it will probably in future be of public use for carriage."

The bill contains no more than the averment that the stream is a *navigable river*, and that for a period of eighteen months before its filing the complainant had used it, from points above the point at which the defendant threatens to construct the boom, for the floatage of saw-logs to a saw-mill below it. There is no averment that it had been at any previous time used for the purposes of transportation, or of floatage; of the distance for which it is capable of use, nor of the seasons or periods of the year when it is capable of use. Nor is there any averment that there are large and extensive forests contiguous to the stream, fitted for furnishing marketable lumber, inducing a continuous business of transporting logs or timber upon it. There is the simple averment, that the stream is a *navigable river*. We know judicially that within the limits of Jackson county there are no tidal streams, which are *prima facie* navigable and public—that all its streams are fresh water, and *prima facie*

[Walker v. Allen.]

private.—*Lewis v. Harris*, 31 Ala. 689; *City Council v. M. & W. Plank-Road Co., Ib.* 76.   The bill avers, consequently, a legal conclusion, omitting an averment of the facts from which it can be drawn by the court.   Such an averment is insufficient, and rendered the bill obnoxious to the several causes of demurrer numbered from one to five inclusive.   "It is a cardinal rule," said the court in *Duckworth v. Duckworth*, 35 Ala. 70, "founded in reason and good sense, that a bill must show the complainant's claim or title to relief with accuracy and clearness, and with such certainty that the defendant may be distinctly informed of the nature of the case which he is called on to meet; matters essential to the complainant's right to relief must appear, not by inference, but by direct and unambiguous averment."

In view of the meagre statements of the bill, and of the possibility that by amendment a case may be made of equitable cognizance, we forbear a discussion of other questions raised by the assignments of error.   The true rule, that which is deducible from our former decisions, to which we have referred, and by which the right of the complainant must be determined, is, that every stream which, in its natural state, and its ordinary volume of water, is capable of being used for the purposes of commerce, of transportation of the products of the fields, forests, or mines upon its banks, in a marketable condition, is for the purposes of navigation to be deemed public—upon its waters the public have a right of way, or easement, which is superior to the right of the riparian proprietor, though he may own the soil of the bed.   It is not essential that continously, at all seasons of the year, the ordinary state of the waters should render them navigable—it may be subject to periodical fluctuations, attributable to natural causes, recurring as regularly as the seasons; and if its periods of navigability continue a sufficient length of time to make it of public use as a highway, then it is subject to public uses.—*The Daniel Ball*, 10 Wall. 557; *The Montello*, 20 Wall. 430; *Morgan v. King*, 18 Barb. 277; s. c., 35 N. Y. 454.

The chancellor erred in overruling the causes of demurrer numbered from one to five, inclusive; and for the error the decree must be reversed, and the cause remanded.