## GULF, COLORADO & SANTA FE RAILWAY COMPANY ET AL. V. THE STATE OF TEXAS.

### No. 2497.

1. **Parallel and Competing Lines of Railroad.**—In allegations in petition on exceptions not going to vagueness or indirectness of the allegations, *held* sufficient to charge that the defendant companies were owners and operators of parallel and competing lines of railroad.

2. **Judicial Knowledge of Facts.**—A court is bound to take judicial knowledge of the leading geographical features of the land. 1 Whart. on Ev., 339. It is a matter of history that important lines of railroad once established have remained as fixed and as permanent in their courses as rivers themselves. They supersede in the main all other modes of transportation between the points they touch, and become as well known as any other geographical feature of the country.

3. **Same.**—Judicial knowledge must be taken that the Houston & Texas Central and the Gulf, Colorado & Santa Fe Railroads are parallel and competing lines of railroad in the State.

4. **Unlawful Consolidation.**—That two or more of the railroad companies forming a combination to control freights are parallel and competing lines is sufficient to fix the status of such combination under section 5, article 10, of the Constitution.

5. **Texas Traffic Association.**—From the record it is apparent that the leading object of the association is by the appointment of a common governing committee to fix rates of transportation so as to prevent competition among the several parties to the contract. We think it also apparent from the language of the section (5 of article 10) of the State Constitution that its leading object was to prevent competing lines of railroad in the State from so fettering themselves, by consolidation, lease, or other agreement by which one should in any way subject itself to the control of another so as to stifle competition for the traffic of the State.

6. **Same.**—The section 5 of article 10 of the Constitution prohibits any railroad company or the managers of any such company from controlling in any way another company owning a competing line.

7. **Same.**—The manner and extent of the control are immaterial. The language of the Constitution clearly evinces that control in any manner and to any extent was intended to be prohibited, provided it was such as is calculated to enable the one railroad by means of a contract or agreement for an interference in the other's affairs to keep down competition between them.

8. **Same.**—We can not see that the facts that a member of the association has the right of withdrawal, or that it can not be punished for a failure to obey the regulations, can make any difference as to the question of the lawfulness of the association. Had any of the defendants withdrawn before suit that fact would have been a defense.

9. **Same.**—Nor is the illegality of a combination such as is shown to exist affected by the fact that no charges for freight had been made or agreed upon in excess of the limits fixed by statute.

10. **Public Policy.**—It seems that in absence of the constitutional inhibition the combination shown would be held illegal at common law.

11. **Interstate Commerce.**—It is conceded that the State could not control the combinations of railroad companies not chartered by the State in carrying freight to and fro between this and other States.

12. **Same.**—But where railway companies are chartered by the State and two or more of them are parallel and competing lines, and they combine with others not subject to State control for a purpose condemned by the Constitution, such combination itself is unlawful and its existence may be enjoined.

Appeal from Travis.　Tried below before Hon. John C. Townes. The opinion sufficiently states the case.

*Baker, Botts & Baker* and *J. W. Terry*, for appellants. — 1. Section 5, article 10, of the Constitution applies only to parallel or competing lines of road, and to show a violation of it the State should allege and prove that the lines operated or controlled by the defendants are parallel or competing. There was no testimony offered by the State on that point, nor was it alleged in the petition that defendants' lines are parallel or competing.

2. The court erred in finding and holding that the articles of association constitute each of its members a manager of or gives it control over the other members within the meaning of the Constitution; because, as defendants contended, said articles show that said association is voluntary in character and each member acts for itself and in no way controls or manages the others. In finding and holding that the respective members of said association or their representatives on the executive committee are managers of the corporate affairs of the others or in any way control them in the sense in which that term is used in the Constitution. In finding and holding that the respective members of the executive committee of said association and its commissioner are officers of the other corporations composing the association.

3. The court erred in finding and holding that the articles of association are in violation of the Constitution of the State.

4. The court erred in enjoining the association from acting upon matters of interstate traffic under the articles of association when the proof showed that by far the largest part of its legitimate business is connected with interstate traffic. The exclusive power being vested in the Congress of the United States to regulate commerce among the States, the Constitution and statutes of the State, in so far as they may apply to such commerce, are in conflict with the Constitution of the United States and void. While the railroads of appellants situated in the State, in so far as commerce wholly within the State is concerned, are subject to the control of the State, yet as instrumentalities of interstate commerce they are within the exclusive control of Congress, and it is not in the power of the State by its Constitution or statutes to regulate how they shall conduct such interstate business or to prescribe what agreements, contracts, or combinations they may or may not enter into with respect to such traffic, or what rates they shall charge, or how they shall fix such rates, whether by agreement among themselves or acting severally or by a commissioner or executive committee employed for that purpose, or to prohibit them from agreeing to maintain rates or to give twenty days notice of change of rates. Wabash, etc., Ry. v. Ill. (U. S. S. C.), 26 Am. and Eng. R. R. Cases, 1; R. R. Comrs. v. R. R. Co., 22 S. C., 220; S. C., 26 Am. and

Eng. R. R. Cases, 29; Hardy v. R. R. Co., 32 Kan., 698; S. C., 18 Am. and Eng. R. R. Cases, 432; L. & N. Ry. v. Comrs., 16 Am. and Eng. R. R. Cases, 1; Picard v. Pullman Car Co., 117 U. S., 34.

5. By the Act of Congress of February 4, 1887, entitled "An Act to Regulate Commerce," exclusive jurisdiction of all matters pertaining to commerce among the States is conferred upon the commission created by that act and the Circuit Courts of the United States, and hence the State court had no jurisdiction to determine whether the Texas Traffic Association, in so far as it deals with interstate traffic, was illegal, and no power to enjoin the continuance of the association in so far as it affected such traffic. The Interstate Commerce Act, secs. 9–17.

6. It appearing from the pleadings and evidence that many of the objects of the association, such as to provide means for the adjustment of differences between the parties thereto, to facilitate the transaction and interchange of business one with another and with other transportation lines, to establish uniform classifications, and to meet together to discuss rates, and many others manifest from the record, are beyond question reasonable and proper, the court erred in enjoining the continuance of the association in toto or the formation of any similar association.

7. It appearing from the pleadings and evidence that the only feature of the association which could possibly be held to give the association control of its members, or the members control of each other, is the agreement for twenty days notice before change of rates, the injunction, if granted at all, should have been confined to enjoining such agreement, for twenty days notice only.

*J. S. Hogg*, Attorney-General, for State.—The points insisted on by the State and opposed by the defendants in the court below and that are most material here are:

1. That the "Texas Traffic Association" is prohibited by law for the reasons:

(1) It combines and controls parallel and competing lines of railway.

(2) The officers of it and the railway members composing it are also officers and agents of parallel or competing lines.

(3) It is a monopoly.

2. That the "Association" is not authorized by law nor by the charters of the railways composing it and is therefore illegal.

3. That the "Association" is a pool of railway rates, is in restraint of trade, prevents competition, and is contrary to public policy.

(1) By section 5 of article 10 of the Constitution, "no railroad * * * or managers of any railroad corporation shall consolidate the stock, property, or franchises of such corporation with * * * or in any way control any railroad corporation owning or having under its control a parallel or competing line;" and proof on this point became unnecessary,

for that the petition charged and the answers admitted the railways were competing lines.

(2) No officer of one railroad corporation can lawfully act as an officer of any other railroad corporation owning or having the control of a parallel or competing line. Const., art. 10, sec. 5.

(3) Any agreement which gives a set of persons an exclusive right or power to regulate, make, or control anything or to perform any particular functions creates a monopoly.

(4) Any association whose purpose is to prevent, restrict, or lessen competition, is a menace to commercial freedom, violates public policy, and should be restrained from acting.

Monopolies prohibited. Const., art. 1, sec. 26. Defined. City of Brenham v. Water Works Co., 67 Texas, 542 and authorities there cited.

Competition encouraged as life of trade. 4 Denio (N. Y.), 352–3. No answer to say it is not destroyed, as the courts will not countenance anything that tends to prevent it. Salt Co. v. Guthrie, 53 Ohio St., 666. All restraints of trade are injurious to the public (68 Pa. St., 173), and a combination that tends to injure the public is unlawful. Id., 174.

Combinations among shoemakers to put up and regulate prices are conspiracies against trade and illegal. 14 Wend., 1. So is a contract to limit amount of coal shipped. 68 N. Y., 558. And also is one to control price in grain. 22 Am. Rep., 171; 79 Ill., 346. Contract to lessen competition at public sale void. Crozier v. Carr, 11 Texas, 376; James v. Fulcrod, 5 Texas, 512.

4. Congress has power "to regulate commerce with foreign nations and among the several States," but railway charters are contracts between the corporations and State, the violation of the terms of which the State can restrain and prevent.

Attorney-General required to take action to prevent corporations from exercising any power not authorized by law. Art. 4, sec. 22, Const.; Rev. Stats., art. 2806.

Control by one over the other, or consolidation of franchises, of parallel or competing lines prohibited. Const., art. 10, sec. 5.

By quo warranto or otherwise Attorney-General is required to take action against and the court to perpetually enjoin railways from violating this provision. Gen. Laws, 1885, p. 66, secs. 2 and 3.

Nothing is implied in favor of corporate powers but charters strictly construed. 3 Am. Corp. Cases, 224; 101 U. S., 71.

Statutes in force when charter granted are in legal effect part thereof. Relfe v. Rundle, 103 U. S., 222; Railway v. Groos, 47 Texas, 429.

Railway companies must act up to the end and design for which they were incorporated. State v. M. L. S. & W. Ry. Co., 45 Wis., 579.

5. The association in all its parts was tainted with illicit purposes to "pool" rates, to consolidate franchises, to combine against competition;

and the court's construction of the "Articles of Agreement" that it was in all its parts unlawful was correct.

*G. W. McCrary*, filed a written argument for appellants.

Gaines, Associate Justice.—This suit was brought in the name of the State by her Attorney-General to restrain certain railroad companies engaged in operating lines within the State from carrying out an agreement entered into by them by which they committed to a body of representatives of the companies the power to fix the rates for which freights should be carried to or from points within the State. The theory of the State's case is that the parties to the agreement are parallel and competing lines, and that the association formed by it is prohibited by section 5 of article 10 of the Constitution, which provides that "no railroad * * * or managers of any railroad corporation shall consolidate the stock, property, or franchises of such corporation with * * * or in any way control any railroad corporation owning or having under its control a parallel or competing line."

The first assignment of error is that "the court erred in finding that many of the railroad companies defendant own and control parallel and competing lines, because, as defendants claim, there is no such admission in the answers, nor is there such an allegation in the State's petition except that defendants are averred to be made parallel and competing lines by the action of said Texas Traffic Association."

Under this assignment we will first consider the allegations in the petition. The petition alleges the authority by which the respective charters of the defendant corporations were granted and defines the lines of railroad respectively operated by them, and then charges "that the lines so owned and operated by the defendants are the main trunk lines and leading railways in Texas, and so traverse the State as to touch and penetrate her commercial centres and become and are lawful competitors for the country's traffic concentrated in the cities aforesaid."

After alleging the formation of an executive committee of the "Traffic Association" by the agreement the carrying out of which is sought to be restrained, the petition also avers "that each of said executive committee and each of the employes of said association is an officer of each and all the defendants * * * and are in common employed and paid by them, and that each of said railroad companies is a competing line for Texas traffic and trade." Also, referring to the association formed by the agreement, the petition charges "that said railway companies by their said conspiracy, contract, combination, and copartnership have formed a consolidation of parallel and competing lines," etc.

The exceptions to the petition are upon grounds that would have been raised by a general demurrer. There is no exception on account of vague-

ness or indirectness of the allegations. In the absence of such an exception every reasonable intendment must be indulged in favor of the sufficiency of the petition. See District Court Rules 17 and 18, 47 Texas; Burks v. Watson, 48 Texas, 108. We think it sufficiently appears from the allegations quoted above that the defendant companies are alleged to be owners and operators of parallel and competing lines of railroad.

But the further question is presented whether from the admissions in the pleadings and facts of which the court could take judicial notice it was authorized to make the finding complained of in the assignment of error. The case was submitted to the court for final disposition upon the petition, the answers, and the supporting affidavits.

The answers of the Gulf, Colorado & Santa Fe Railway Company and of the Fort Worth & Denver City Railway Company formally admit all allegations of the petition which are not therein specifically denied. The St. Louis, Arkansas & Texas Railway Company adopt the answer of the Santa Fe Company. The answers of these defendants do not deny the roads of the defendant companies are parallel or competing lines, therefore the fact may be considered established as to them. On the other hand the other defendants in their answers deny all the allegations of the petition not specially admitted in such answers, and we find in their pleadings no admission that any one of the railroads are parallel to or a competitor for traffic with any other. Unless, therefore, the court could know judicially that two or more of the roads which were operated by the members of the association were parallel or competing lines the finding was not warranted against the last named defendants. In Wharton on Evidence it is said: "Our own law * * * adopts the position that reason and evidence are the co-ordinate factors which go to make up proof, and that a judge in trying a case must not only exercise his own logical faculties in construing and applying evidence, but must draw on his own sources of knowledge for such information as is common to all intelligent persons of the same community. Such information must not only be thus common but must be of undisputed truth. When it becomes disputable it ceases to fall under the head of notoriety." 1 Whart. on Ev., sec. 329.

The Supreme Court of the United States say: "It certainly can not be laid down as a universal or even as a general proposition that the court can judicially notice matters of fact. Yet it can not be doubted that there are many facts, particularly with respect to geographical positions, of such public notoriety and the knowledge of which is to be derived from other sources than parol proof which the court may judicially notice. Thus, in the case of United States v. La Vengeance, 3 Dallas, 297, the court judicially noticed the geographical position of Sandy Hook, and it may certainly take notice judicially of like notorious facts, as that the bay of New York for instance is within the ebb and flow of the tide."

Peyroux v. Howard, 7 Pet., 324. "A court is bound to take judicial knowledge of the leading geographical features of the land, the minuteness of the knowledge so expected being in inverse proportion to the distance." 1 Whart. on Ev., sec. 339. The principle has been applied in various ways, as the following cases will show: Tremer v. Stewart, 55 Ala., 458; Gibson v. Stevens, 8 How. U. S., 399; Vanderworker v. People, 5 Wend., 530; Pierce v. Langfit, 101 Pa. St., 507; Steinwitz v. Turnpike Co., 57 Ind., 457; Tewksbury v. Schulenburg, 41 Wis., 384; Walker v. Allen, 72 Ala., 456; Oppenheim v. Wolf, 3 Sanf. Ch., 571; Neaderhouser v. State, 28 Ind., 257.

In Railway Company v. Rushing, 69 Texas, 306, Chief Justice Willie says: "It may be that this court judicially knowing the geography of the State might take notice of the general direction of these two roads as fixed by the statute under consideration, that their lines must necessarily cross each other, and could therefore treat them as connecting lines and not parallel to each other. But as to whether they are competing lines we can have no judicial knowledge whatever."

This latter proposition as a general rule and as applied to the case then before the court is undoubtedly correct. Whether two roads which intersect each other at a certain point are competitors for freight or not must depend upon a variety of circumstances not known to the court. But the authorities cited show that we must take notice of the geography of the State, and at least of its navigable streams. It is a matter of history that important lines of railroad once established have remained as fixed and as permanent in their course as the rivers themselves. They supersede in the main all other modes of travel between the points which they touch and become as well if not better known than any other geographical feature of the country. Their locality becomes "notorious and indisputable." For instance can we doubt that the Houston & Texas Central Road runs from Houston to Dallas, and that the Gulf, Colorado & Santa Fe touches with its lines the same points? Can we doubt that they run during a considerable portion of their lines practically parallel to each other, and that they must necessarily compete for the traffic lying between them? We think we must take judicial notice that these two roads are parallel and competing lines, and this is sufficient so far as the disposition of this case is concerned. We are of opinion that the finding would have been sufficient to support the judgment if it had been that but two of the defendants were competitors with each other for traffic. The same may be said as to the portions of the lines of the Texas & Pacific Company and of the St. Louis, Arkansas & Texas Company which extend from Sherman to Texarkana. We can not shut our eyes to the "notorious and indisputable" facts that these parts of the respective lines touch at the same points and that they are natural competitors for the traffic of a large scope of country.

Under the next succeeding assignments of error it is insisted by coun-
sel for appellants that the agreement in controversy which establishes the
"Texas Traffic Association" is not in violation of section 5, article 10, of
the Constitution.   In order to determine this question we will give
briefly some of the prominent provisions of the articles of agreement by
which the association is created.   Among its purposes stated in the pre-
amble is that "of preventing sudden and extreme fluctuations in Texas
rates, alike injurious to the public and the transportation companies."
Article 1 provides that "the traffic subject to this agreement shall be all
freight and passenger business except express and mail carried by lines
parties hereto which has origin or destination within the State of Texas
other than business to or from El Paso, Eagle Pass, and Laredo proper."
The managing body of the association is an executive committee com-
posed of one member from each party to the agreement.   They are to
elect a commissioner, who is the chief executive officer.   "The execu-
tive committee shall agree upon the classification and rates covering the
traffic subject to this agreement.   No member shall directly or indirectly
reduce rates," etc.   Any violation of the agreement is to be reported to
the commissioner, who shall "check the irregularity if he can."   "All
rates, rules, regulations, and decisions, when adopted by agreement or
by arbitration, shall be simultaneously furnished by the commissioner to
the traffic departments of all members of the association for the guidance
of all the parties in interest," etc.

Without quoting further we think it apparent that a leading object if
not the sole object of the association is by the appointment of a common
governing committee to fix rates of transportation so as to prevent com-
petition among the several parties to the contract.   We think it also ap-
parent from the language of the section of the State Constitution that
its leading object was to prevent competing lines of railroad in the State
from so fettering themselves by consolidation, lease, or other agreement
by which one should in any way subject itself to the control of another
so as to stifle competition for the traffic of the State.   The section pro-
hibits any railroad company, or the managers of any such company, from
controlling in any way another company owning a competing line.   If one
is prohibited from making such contract we think two or more are so
prohibited, and that when one company enters into an agreement with
others any one of which owns or controls a competing line of railroad by
which it subjects itself to the government of a body appointed by all
parties to the agreement, that such company places itself under the con-
trol of the other to a definite extent and acts in violation of the Consti-
tution of the State.   The manner and extent of the control are immaterial.
The language of the Constitution clearly evinces that control in any man-
ner and to any extent was intended to be prohibited, provided it was
such as is calculated to enable the one railroad by means of a contract or

agreement for an interference in the other's affairs to keep down competition between them.

. But it is insisted that because a unanimous vote of the committee is required to adopt any proposition involving revenue, because the rates are subject to be changed in a certain manner pointed out in the agreement, because any member may withdraw upon giving ninety days notice, and because no penalty is prescribed for a violation of the articles, the agreement does not subject one road to the management or control of another.

But it is apparent that as long as one company remains a member of the association it is controlled as to rates by the executive committee and is not free to enter into competition with its associates for freights. It may be that by its representative refusing his assent to any proposition fixing rates in the first instance that it could not be controlled in this respect; but when once fixed it would be powerless to secure a change without the consent of the representatives of the others. Besides, the executive committee upon its appointment are made to the extent of their powers managers of all the companies, and hence when a company subjects itself to the power of the committee by entering the association it places itself under the control of managers of other railroads. We can not see that the facts that a member has the right of withdrawal or that it can not be punished for a failure to obey the regulations can make any difference as to this question. If any one of defendants had withdrawn when this suit was filed the allegation of that fact would have been an answer as to that company to the State's petition.

But it is further argued that because it has not been shown that they have made charges for freight or passengers in excess of the limits allowed by law their action is not illegal. But we do not understand that the State seeks to restrain them for illegal charges made under the direction of the association, but for doing an illegal thing in entering into and carrying out the terms of the agreement for the association. It is not quite clear to our minds that even in the absence of the constitutional provision we have had under discussion the defendant association could not be enjoined as being in restraint of competition and contrary to public policy.

But it is further insisted that because the agreement in question concerns interstate commerce neither the State in its political capacity nor its courts have any jurisdiction over the matter. We understand the agreement to embrace both commerce within the State and between this State and other States. The former might be enjoined if the latter could not. We are inclined to the opinion that if none of the corporations composing the association owed their existence to our laws that the State would have no power to prohibit or interfere with a contract of this character in so far as it regulated charges upon freight carried to and fro between

this and other States.    Wabash, etc. R. R. Co. v. People, 118 U. S., 557.
But we think we have here a very different question.    Several of the
defendant corporations are chartered under the laws of this State—nota-
bly the Gulf, Colorado & Santa Fe Railway Company and the Houston
& Texas Central Railway Company.    If we are correct in our conclusion
we think it follows that the defendant corporations who derive their
charters from this State are acting in violation of law in entering into
this contract of association, some of the members of the association being
competing lines of roads.    We think that the association being illegal as to
some of the defendants is illegal as to all.    It may be that should the
companies which have their charters from the United States or from other
States come into this State and enter into a similar arrangement among
themselves the State would be powerless to interfere because of it being
a matter within the exclusive jurisdiction of the United States.    Their
contract might not be a violation of our laws because we could make no
laws interfering with interstate commerce.    But it does not follow that
they would enjoy the immunity of entering into contracts with our own
corporations which are prohibited to the latter, and thus enable them to
set at naught the limitations upon their powers.    There are certainly
many things the State may do in exercise of its police powers which may
affect commerce between the States or between this State and foreign
countries; but how far the police power of the State may extend so far as
it affects the question before us we need not inquire.

We are of the opinion that the association under consideration is clearly
illegal as to some of the parties to it, and that being illegal as to some it
is illegal as to all and may be restrained.

The judgment is therefore affirmed.

*Affirmed.*

Opinion December 21, 1888.

Motion for rehearing transferred to Galveston and refused.

*J. W. Terry* and *G. W. McCrary*, for motion.

*J. S. Hogg*, Attorney-General, resisting.