[L. A. Nos. 655 to 658. In Bank.—May 5, 1899.]

CITY OF LOS ANGELES, Respondent, v. LOS ANGELES CITY WATER COMPANY et al., Appellants.—L. A. No. 655. CITY OF LOS ANGELES, Appellant, v. LOS ANGELES CITY WATER COMPANY et al., Respondents.—L. A. No. 656. LOS ANGELES CITY WATER COMPANY, Respondent, v. CITY OF LOS ANGELES et al., Appellants.—L. A. No. 657. CRYSTAL SPRINGS LAND AND WATER COMPANY, Respondent, v. CITY OF LOS ANGELES et al., Appellants.—L. A. No. 658.

WATER SUPPLY OF LOS ANGELES—CONTRACT—LIMITATION—CONSENT OF COUNCIL—ACQUIESCENCE.—Under the contract of the city of Los Angeles with the Los Angeles City Water Company for thirty years' supply of water to the inhabitants of the city, made in 1868, when its population was less than six thousand, a provision that the water company should not take from the river more than ten inches of water for the use of its waterworks without the previous consent of the city council, whatever its meaning, cannot limit its right in supplying water to the city to ten inches measured under a four-inch pressure, without formal consent of the city council, where it appears that that amount was from the first totally inadequate, and that without objection and with the acquiescence of the city a supply of three hundred inches of water was originally taken and used to supply the city, and that the supply was, with like acquiescence, increased with the increase of the population to seven hundred inches.

ID.—WITHDRAWAL OF CONSENT—INVALID ORDINANCE.—The city having acquiesced in the continued use of a greater amount of water by the water company from 1868 to 1896, and in its expenditure of vast sums of money in supplying the city with water in pursuance of the contract, upon the faith of the continuance of its right to use sufficient water for that purpose, could not withdraw its consent to such use within the period of the contract; and an ordinance passed by the city council in 1896 limiting the supply of the water company from the river to ten inches of water under a four-inch pressure, is invalid.

ID.—AGREEMENT TO PAY FOR IMPROVEMENTS—EXPIRATION OF CONTRACT—RIGHT OF POSSESSION—TENDER.—Where the water company receives possession under the contract of a small line of wooden pipes, and agreed to construct iron pipes throughout the city, and build new waterworks, as the demands of the city required, and at the expiration of thirty years to return the whole to the city "upon payment to them of the value of the improvements made," et cetera, which the city agreed to pay, the contract is not one of lease; but whether so considered or not, the rights of the parties

at the expiration of the contract are fixed by its terms, and not by legal implication; and the city cannot reclaim possession from the water company without first paying or tendering the value of the improvements.

Id.—Right to Water Rates—Receiver—Injunction.—The city, not having paid or tendered the value of the improvements, and having no right to the possession of the works, and no rights in the contracts between the water company and the rate payers, and being adequately protected by the value of the improved waterworks, it cannot, through the appointment of a receiver, and by means of an injunction, prevent the water company from receiving payment of water rates after the expiration of the period fixed by the contract.

Id.—Rights of Water Company—Mortgagee in Possession.—The water company is substantially in the position of a mortgagee in possession, having a lien on the property involved as security for the performance of the covenants of the city contained in the contract, and without tender or payment, its possession should not be disturbed or a receiver appointed.

Id.—Injunction against City.—The water company, not having an adequate remedy at law, may enjoin the city from using its municipal power to take forcible possession of the waterworks.

APPEALS from judgments and orders of the Superior Court of Los Angeles County.   Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, Stephen M. White, and White & Monroe, for Water Companies, and S. G. Murphy, Appellants, in No. 655, and Respondents in Nos. 656, 657, 658.

The order appointing the receiver of the waterworks was erroneous, if not void. (*French Bank case,* 53 Cal. 495; *Bateman v. Superior Court,* 54 Cal. 285, 288; *Smith v. Superior Court etc.,* 97 Cal. 348; *San Jose Safe Deposit Bank of Savings v. Bank of Madera,* 54 Pac. Rep. 83; *Fischer v. Superior Court,* 110 Cal. 139, 140; *Havemeyer v. Superior Court,* 87 Cal. 267; *Havemeyer v. Superior Court,* 84 Cal. 367; *Sengfelder v. Hill,* 47 Pac. Rep. 757; *State ex rel. Amsterdamsch Trustees etc. v. Superior Court etc.,* 15 Wash. 668; 55 Am. St. Rep. 907.)   The right of diversion of more than ten inches of water and the extent of the right is settled by the practical construction of the contract fixed by the conduct of the parties thereunder from the beginning.   (*Central Trust Co. v. Wabash R. R. Co.,* 34 Fed. Rep.

255, 256; *Mulford v. Le Franc,* 26 Cal. 108, 109; *McNeil v. Shirley,* 38 Cal. 202; *Pico v. Coleman,* 47 Cal. 65; *Truett v. Adams,* 66 Cal. 218; *Hill v. McKay,* 94 Cal. 20; *Yocco v. Conroy,* 104 Cal. 468; *Long Bell Lumber Co. v. Stump,* 86 Fed. Rep. 578.) The consent of the city to the taking of a greater quantity cannot be withdrawn, large expenditures having been made on reliance thereupon. (*Los Angeles City Water Co. v. Los Angeles,* 88 Fed. Rep. 745; *Flickinger v. Shaw,* 87 Cal. 126; 22 Am. St. Rep. 234; *Grimshaw v. Belcher,* 88 Cal. 217; 22 Am. St. Rep. 298; *Smith v. Green,* 109 Cal. 228; *Rhodes v. Otis,* 33 Ala. 600; 73 Am. Dec. 439; *Woodbury v. Parshley,* 7 N. H. 237; 26 Am. Dec. 739; *Lacy v. Arnett,* 33 Pa. St. 169; *Russell v. Hubbard,* 59 Ill. 337; *Beall v. Will Co.,* 45 Ga. 33; *Veghte v. Raritan etc. Power Co.,* 19 N. J. Eq. 153; *Wilmington etc. R. R. Co. v. Battle,* 66 N. C. 546.) No tender having been made of the value of the improvements, the water company had the right to retain the possession of the waterworks, under the terms of the contract, until such payment is made, whether the contract is a lease or not. (*National Waterworks Co. v. Kansas City,* 62 Fed. Rep. 663, 664, 853; *Mullin v. Pugh,* 45 N. E. Rep. 347; *Ecke v. Fesler,* 65 Wis. 55; *Van Rensselear v. Penniman,* 6 Wend. 569; *Hopkins v. Gilman,* 22 Wis. 455.) The defendants could not be enjoined from preventing the city from taking possession, and the injunction to prevent the city from taking forcible possession was proper, the injury to the defendants being greater than that to the city. (*Hicks v. Compton,* 18 Cal. 206; *Porter v. Jennings,* 89 Cal. 440; *Paige v. Akins,* 112 Cal. 401; *Rohrer v. Babcock,* 114 Cal. 124; *King v. Stuart,* 84 Fed. Rep. 546.) A preliminary injunction will issue to keep a party in possession, but not to oust one who is in possession. (*New Orleans etc. R. R. Co. v. Mississippi etc. R. R. Co.,* 36 La. Ann. 561; *Vaughn v. Yawn,* 29 S. E. Rep. 759; *Foster v. Joliet,* 27 Fed. Rep. 899.)

W. E. Dunn, and Lee & Scott, for the City of Los Angeles, Respondent in No. 655, and Appellant in Nos. 656, 657, and 658.

The water company could not enjoin a trespass by the city. (10 Ency. Pl. & Pr. 956, 957; *Tomlinson v. Rubio,* 16 Cal. 202; *Gardner v. Stroever,* 81 Cal. 148; *Mechanics' Foundry v. Ryall,*

62 Cal. 416; 75 Cal. 601; *Leach v. Day,* 27 Cal. 643.)   The city is responsible and can respond in damages.   (*Bigelow v. Los Angeles,* 85 Cal. 614; *Reardon v. San Francisco,* 66 Cal. 492.)   So far as rates are concerned, if the city is not entitled thereto, the water company could recover the money. (*Argenti v. San Francisco,* 16 Cal. 255.)   Where there is a disputed claim of possession, a receiver may be appointed.   (*Hlawacek v. Bohman,* 51 Wis. 92, 95.)   The city was entitled to the possession at the end of the thirty years.   (*Tallman v. Coffin,* 4 N. Y. 134; *Conover v. Smith,* 17 N. J. Eq. 51; *Rockport Water Co. v. Rockport,* 161 Mass. 279.)   The remedy of obtaining possession, by specific performance of the covenant in the contract to return the property, is an equitable one.   (*McLane v. P. & S. V. R. R. Co.,* 66 Cal. 607; *Scott v. Sierra etc. Co.,* 67 Cal. 75; Jones on Railroad Securities, 2d ed., sec. 341; *American Bridge Co. v. Heidelbach,* 94 U. S. 798.)   In an equitable action, a receiver of property may be appointed, though the defendant is a corporation. (*Decker v. Gardner,* 124 N. Y. 334; *United States Trust Co. v. New York etc. Ry. Co.,* 101 N. Y. 418; *Sacramento etc. R. R. Co. v. Superior Court,* 55 Cal. 453; *McLane v. P. S. & V. R. R. Co., supra; American Bridge Co. v. Heidelbach, supra.*)   The city has the right to stand upon the terms of the contract as to the amount of water to be used without the city's consent. The rule of interpretation by the conduct of the parties does not apply to municipal incorporations.   (*National W. W. Co. v. School Dist.,* 48 Fed. Rep. 523; *Lux v. Haggin,* 69 Cal. 329; *Barnham v. San Jose,* 24 Cal. 585.)

McFARLAND, J.—These four appeals are taken, by the various parties, from certain orders made in three certain actions pending in the superior court of the county of Los Angeles.

One of the three actions was entitled *Los Angeles City Water Company, Plaintiff, v. The City of Los Angeles,* and the persons who constituted the mayor and common council of said city, and in that case the appeal is by the defendants in said action from an order of the court below enjoining and restraining the defendants from taking possession of certain waterworks property hereinafter mentioned; and this is the appeal numbered L. A. 657.

Another of said actions is entitled *Crystal Springs Land and Water Company, Plaintiff, v. City of Los Angeles et al., Defendants,* and the appeal in that case is by the defendants from a similar order enjoining and restraining the defendants from taking possession of certain waterworks described in the complaint therein. This is the appeal numbered L. A. 658.

The other of the three actions is entitled *The City of Los Angeles, Plaintiff, v. The Los Angeles City Water Company and The Crystal Springs Land and Water Company,* above mentioned. In this action the plaintiff sought to have a receiver appointed to take possession of the waterworks property above mentioned, and to restrain the defendants therein from collecting water rates or receiving any income from said property; the court made an order appointing a receiver to receive the water rates and income from said property, but refused to appoint a receiver to take possession of the property. The defendants therein appealed from the order appointing the receiver; and this is the appeal numbered L. A. 655. The city of Los Angeles appealed from that part of the order which denied a receiver for the purpose of taking possession of the property; and this is the appeal numbered L. A. 656.

The three cases were not consolidated in the court below; but they were heard and the orders appealed from were made at the same time. By agreement between the parties, the appeals were all brought here in the same transcript, and were argued all together and submitted at the same time.

The litigation in all the cases arose out of a certain written contract made on the twenty-second day of July, 1868; and the determination of the rights of the various parties depends upon that contract and upon facts occurring subsequently to its execution. The municipal name of the city of Los Angeles was at that time "The mayor and common council of the city of Los Angeles," and by that name the city was the party of the first part to the contract, and John S. Griffin, Prudent Bradbury, and Solomon Lazard were the nominal parties of the second part; but as the municipality afterward took the name of the city of Los Angeles, and as Griffin and others shortly after the execution of the contract assigned all their rights therein to the Los Angeles City Water Company, which assignment was antici-

pated by both parties at the date of the contract, we will, for convenience, speak of one of the parties as the city of Los Angeles, and of the other as the Los Angeles City Water Company. Facts occurring after the execution of the contract are shown in the record by various affidavits and other evidence.

At the time of the execution of the contract the city owned a water plant of a very meager character. It consisted mainly of a water wheel and a few miles of wooden pipe. By the contract the city covenanted and agreed "to deliver and concede" to the parties of the second part, their heirs, assigns, et cetera, the exclusive use, control, possession and management of the waterworks, together "with the right to sell and distribute water for domestic purposes, and to receive the rents and profits thereof for their own use and benefit, except as hereinafter provided, hereby giving and granting the parties of the second part . . . . the right to lay pipes in any and all the streets of said city, and to dig and make all necessary excavations for that purpose, and the right of way through, upon, and over land or streets belonging to the said city of Los Angeles, with the additional right to take water from the Los Angeles river at a point above or near the present dam; provided, always, that the said parties of the second part . . . . shall at no time take from the said river for the use of said waterworks more than ten inches of water without the previous consent of the mayor and common council of said city." This grant was made upon the consideration that the parties of the second part should pay to the city fifteen hundred dollars per annum "until the conclusion of the term of this contract"; that they should surrender to the city certain claims which they held against the city for damages; and upon the further consideration that they should make certain improvements "about, in, and upon said waterworks at their own proper costs and expenses," to wit, that they should lay down twelve miles of iron pipes of sufficient capacity to supply the inhabitants of the city with water for domestic purposes; that they should erect one hydrant, as a protection against fire, at each corner of each cross street where "the water pipes are now, or may hereafter be laid by virtue of this contract"; that they should erect an ornamental fountain upon the public plaza at a certain cost, and that they should "within two years from

the approval of this contract and ordinance construct, at their own expense, such ditches, flumes, or erect such machinery in connection with said waterworks, as will secure to the inhabitants of said city a constant supply of water for domestic purposes, and shall construct reservoirs of sufficient capacity for that purpose." The parties of the second part agree "that they will make the improvements, hereinbefore mentioned and set forth, in the following manner, to wit: That they will replace all the wooden pipes now belonging to the said waterworks within one year from the signing and approving of this contract and ordinance, and that they will extend said iron pipes as fast as the citizens desiring to be supplied with water for domestic purposes will agree to take sufficient water to pay ten per cent per annum interest upon the cost of extending such pipes through the streets now supplied with water. That they will, within one year from the date hereof, place a hydrant, to be used as a protection against fire, at one corner of one street at each of the cross streets where the pipes are now laid down, and will erect hydrants at other street corners, according to the terms of this contract, as fast as the pipes are extended through the streets of said city. That they will erect, or cause to be erected, an ornamental fountain upon the public plaza, of such design as the mayor and common council shall direct, within one year from the date hereof; that they will furnish water for the public schools and city hospitals, jails, free of charge, when the same are near the pipes, the city furnishing the necessary conduits for that purpose; that they will make all the improvements herein mentioned and set forth, and keep the same in repair at their own cost and expense, for the said period of thirty years, and return the said waterworks to the said party of the first part at the expiration of the said period of thirty years in good order and condition, reasonable wear and the damage of the elements excepted, upon the payment to them of the value of the improvements made after the approval of this contract, to be ascertained as hereinbefore provided, . . . . and will pay all state and county taxes assessed upon said waterworks during the said period of thirty years." Another provision is to the effect that the parties of the first part "shall have and do reserve the right to regulate the water rates charged by the said parties of the

second part, or their assigns, provided that they shall not so
reduce such water rates or so fix the price thereof to be less than
those now charged by the said parties of the second part for
water"; there is also an agreement by the parties of the second
part that a certain lease theretofore executed by the city to one
Sansevaine shall be surrendered up and canceled. There is also
a provision that the rights conceded to the parties of the second
part shall not embrace certain waterworks of the city used for
the distribution of water for the purpose of irrigation, except
as to the ten inches of water before mentioned; and the
parties of the second part covenant that they will not dispose
of any water for the purposes of irrigation, "but shall only
take from said river the water necessary for domestic purposes
as above specified." The parties of the first part covenant "that
at the expiration of the period of thirty years from the execu-
tion of this instrument they will pay to the said parties of the
second part . . . . the value of the improvements made in,
about, and upon the said waterworks in pursuance of this con-
tract; the same to be ascertained by arbitration, in case the par-
ties cannot agree upon the value thereof, the said party of the
first part and the parties of the second part . . . . to choose
one man each, and the two men thus chosen to select a third
man, and the judgment of the three men thus selected shall be
final in the premises. And the said party of the first part here-
by covenants and agrees to make no other lease, sale, contract,
grant, or franchise to any person or persons, corporation or com-
pany, for the sale or delivery of water to the inhabitants of said
city for domestic purposes during the continuance of this con-
tract, always without prejudice to any rights already granted."

The foregoing are, we think, all the parts of said contract
necessary to be now stated. Other parts of the contract may
be hereafter noticed, and other facts disclosed by the record
which are material in the case will be presently stated.

At the date of the execution of the contract the city of Los
Angeles contained only from five thousand to six thousand in-
habitants, and its boundaries were confined to four square
leagues of land; at the termination of the thirty years, in 1898,
its population was over one hundred thousand, and its bounda-
ries has been extended in several directions so as to include from

ten to fifteen additional square miles. As fast as this increase in area and population took place the water company, at vast expense, extended its pipe lines, reservoirs system and other necessary parts of a water plant, so as to supply the growing wants of the city and its people. It extended its lines outside of the territory over which the city had municipal jurisdiction at the date of the contract, and acquired from others reservoirs and water property which were on the new territory, and constructed upon land which the city did not own, and through streets which had no existence in 1868. Throughout all the territory, old and new, it furnished free water for hydrants, fire apparatus, school purposes, et cetera, as the increasing population and settlement demanded. It is quite clear from the record that the company substantially complied with all its covenants in the contract.

The thirty years mentioned in the contract ended on the twenty-second day of July, 1898. When that date was near at hand the city had made no arrangements to pay for the improvements and had made no tender of the value thereof; on the other hand, it claimed the right to take possession of all the waterworks property without any previous payment of the value thereof, and threatened to take such possession immediately at the termination of the thirty years. It claimed to be in the position of a lessor, with the right of possession at the end of the term. There had been no fixing of the amount of the value of the property by arbitration. The city had no money in its treasury with which to pay for the value of the property. There was a great difference of opinion between the two parties as to such value. The city, however, admitted that the value was as much as one million of dollars; and it is quite apparent that, under the law, it had no means to raise that amount of money except by the issuance of bonds, which would have to be sanctioned by a vote of the electors of the city, and thus the prospect of its ability to pay was distant and contingent upon the consent of the electors. Under these circumstances the Los Angeles City Water Company, a few days before the expiration of the thirty years, brought the action hereinbefore alluded to to restrain the city from taking possession of the property out of which the appeal No. 657 arose.

The Crystal Springs Land and Water Company, it is proper to

say here, is a corporation which owns, or claims to own, a certain water plant which it had leased to the Los Angeles City Water Company, the pipes, plants, et cetera, of the former company connecting with the works of the latter; and there is a contention between the parties as to whether or not the property, or at least a part of it, claimed by the Crystal Springs company belongs to the Los Angeles Water Company and is part of the property which the city should have under the said contract. As the city also threatened to take possession of part of the property claimed by the Crystal Springs company, the latter also brought an action against the city to prevent that threatened action of the city, at the same time the action just above referred to was brought by the Los Angeles City Water Company, and, so far as these present appeals are concerned, no adjudication as to the relationship between these two water companies is necessary. The court granted the injunction in the said suit of the Crystal Springs company against the city.

Shortly after the commencement of the two last-mentioned cases the city commenced the action hereinbefore mentioned for the appointment of a receiver to take possession of the property of the said two water companies, and to manage and control the same. An order was made in said action appointing a receiver to collect and receive the rents, issues, and profits of said property, "including water rates" derived from the sale of water by the Los Angeles Water Company to the people of the city—as well those which had accrued since the filing of the complaint as those which should accrue thereafter; by said order the defendants were ordered to pay to the receiver all moneys in their possession derived from the water rates since the filing of the complaint, including those which had been deposited in the Farmers and Merchants' Bank of Los Angeles under a stipulation between the parties to the effect that the money should be deposited in said bank temporarily during the hearing of the motion for a receiver. The appeal by the water companies from this order is the most important one now before the court.

Before considering the main questions in the case it is proper here to notice a preliminary point made by the city, and somewhat insisted on, to wit: That the only quantity of the water of the Los Angeles river to which the water company is entitled

under the contract is ten inches under a four-inch pressure. This contention cannot be maintained. The words of the contract on this subject are simply that the company shall not take from the river "more than ten inches of water without the previous consent" of the city; there is nothing in the contract about "four-inch pressure," nor is there any intimation as to what the parties meant by "ten inches" of water. But, looking at the context and the subject matter of the contract, it is quite evident that the parties did not mean only ten inches under a four-inch pressure. If that had been the meaning there would have been no sense in the other important covenants. At the time of the contract it would have taken many times ten inches under a four-inch pressure to furnish water for domestic purposes to even the few thousand people who were then inhabitants of the city; and much more than that amount was necessary to supply free water under the contract; and a solemn covenant to supply a growing city with sufficient water for domestic and municipal purposes for thirty years, from a flow of ten inches under a four-inch pressure, would have been absurd. The company, immediately after the date of the contract, commenced to use an amount of water greatly in excess of ten inches under a four-inch pressure; soon after the execution of the contract the company was using three hundred inches under a four-inch pressure, and from that to the present time they have been using, with the knowledge and consent of the city, from three hundred to seven hundred inches so measured. Therefore, whatever (if anything) was meant by the simple words "ten inches," the contract was immediately, and has been continuously, construed by the action of the parties as meaning more than ten inches measured under a four-inch pressure. There is no pretense that the city ever objected to the use of this water by the water company until 1896, when an ordinance was passed by the city government undertaking to withdraw the city's consent to the taking of more than ten inches from the river. It is difficult to imagine how this ordinance was passed seriously; for if the water company had been prevented from taking from the river at that time more than ten inches of water under a four-inch pressure, there certainly would have been a water famine in the city, for the city had no works of its own, and no means whatever for sup-

plying water for either domestic or municipal purposes. But the city, having allowed the water company for nearly thirty years to divert the quantity of water above mentioned, and to expend vast sums of money upon the faith of a continuance of the right to take said water, could not withdraw its consent within the period of the contract. This same contention was made by the city in the case of the *Los Angeles City Water Co. v. City of Los Angeles*, 88 Fed. Rep. 745, in the United States circuit court for the Southern District of California; but the court held otherwise. In that case Wellborn, the learned judge holding the court, said: "If it be conceded, as claimed by defendants (which, however, I do not decide), that the provision of the contract limiting the quantity of water to be taken from the river without previous consent of the city is sufficiently certain for enforcement, or, more specially, that said quantity is ten inches measured under a four-inch pressure, still the consent of the city to the taking of a larger quantity, once given, cannot be withdrawn during the life of the contract, for the reason that large expenditures have been made by complainants in reliance upon such consent." The court cites as authorities to the point: *Rhodes v. Otis*, 33 Ala. 600; 73 Am. Dec. 439; *Woodbury v. Parshley*, 7 N. H. 237; 26 Am. Dec. 739; *Lacy v. Arnett*, 33 Pa. St. 169; *Russel v. Hubbard*, 59 Ill. 339; *Beall v. Marietta etc. Mill Co.*, 45 Ga. 33; *Veghte v. Raritan Water Power Co.*, 19 N. J. Eq. 153; *Wilmington etc. R. R. Co. v. Battle*, 66 N. C. 546; *Flickinger v. Shaw*, 87 Cal. 126; 22 Am. St. Rep. 234; *Grimshaw v. Belcher*, 88 Cal. 217; 22 Am. St. Rep. 298; *Smith v. Green*, 109 Cal. 228, all of which sustain the point.

The main question in these cases is this: Had the city the right to take possession of the waterworks at the end of the thirty years without paying for the same or tendering payment? If this question should be answered in the negative, and we think it should, then it seems to clearly follow that all the orders of the court below appealed from on these appeals must be affirmed, except the one appointing the receiver, and this latter order must be reversed.

The city undertakes to contend that the contract is a lease— a lease pure and simple; and as the contract, according to the city's contention, must be thrown into the category of a "lease,"

it contends for one of the well-known features of a lease of land, to wit, that at the expiration of the term the lessor has an immediate right of re-entry and possession. This position is not tenable. The written instrument in question cannot be categoried into any smaller class than that of a "contract." It is a contract with many and various covenants. It was not called a lease (however suggestive that might have been) by the parties who made it. The city entered into the contract by means of an ordinance which was entitled, "An ordinance contracting for the care, maintenance, and improvements of the city waterworks." The first section says that "the contract" hereinafter set forth, et cetera; the second section describes it as "this agreement"; it was afterward said "that at the expiration of the period of thirty years from the execution of this instrument they will pay," et cetera; in another part of the instrument it is called "this contract and ordinance"; in another place it speaks of "the terms of this contract"; in another place it speaks of "the approval of this contract." The only place where there is any reference whatever to the contract as a lease is the agreement that the party of the first part will "make no other lease, sale, contract, grant, or franchise to any person or persons"; and this language can as well be construed as designating the instrument a "sale, contract, grant, or franchise," as designating it a "lease." In the opinion of the court below it is well said as follows: "I do not perceive any theory which justifies the contention that the agreement is a lease as to the pipe lines, flumes, and other 'improvements' constructed by the water company. Manifestly, the city could not lease what it never had, and the present distributing system did not exist at the time the agreement of 1868 was executed. In fact, the system then existing has been entirely superseded and constitutes no part of the present plant. Neither can it be said with any show of reason that the distributing pipes and reservoirs constructed by the water company constitute improvements on the leased property and revert therewith and as part thereof upon the termination of the lease." The instrument in question could as well be called a "contract to purchase," with all the incidents of such a contract following, as a "lease." It is, in fact, a contract by which the city agreed to give immediate possession to the water company

of a small line of wooden pipes which the city then owned, and to allow it to build new waterworks throughout the city as necessity demanded, with covenants on the part of the water company that it would change what little the city had then in the way of waterworks into better ones, and would create new works as fast as the demands of the city required; that the water company should have the right to do this and to collect water rates for a period of thirty years in consideration of the covenants entered into by the water company, and that upon the expiration of thirty years the city would pay the company for all the works which it should have created, and that the water company, upon payment therefor, should then deliver possession of all the waterworks, as they should exist at the end of the period, to the city. The rights of the parties do not rest upon legal implications; they are determined by covenants expressly stated in the contract. These are that the city should pay for the works to be created by the water company; and that the company should deliver possession thereof to the city "upon the payment" to it of the value of such property. There is no agreement, express or implied, that the company should yield up possession before payment. Even in the case of a strict lease of land, where the lessee is to erect improvements to be paid for by the lessor at the expiration of the term, the lessor is entitled to possession at the end of the term without payment—leaving the tenant to his action to recover the value—only where there is no express agreement in the instrument which changes the result that flows by implication from the mere nature of a lease; in such a case, if the clear meaning of the contract is that the lessor is to have possession only upon payment, then he has no right to possession prior to payment. Such a case is presented in *Swift v. Sheehy*, 88 Fed. Rep. 924. There the court say: "There is in this contract, distinguishing it from the cases principally relied upon by the defendant's counsel, an express provision that the lessor can only become the owner of and entitled to the possession of the buildings and improvements upon the payment to the lessees of the value thereof. . . . . At common law, under a contract of lease by which the lessee was permitted to make improvements upon the land during the existence of his lease, without further express reservation as to the termination of the term, the im-

provements went with the land back to the lessor. The contract in question does not only require the lessor, at the termination of the lease, to pay the lessees the value of the improvements, but it, in effect, entitles the lessees to retain the ownership and possession until the lessor shall pay them therefor."

But the case of *National Waterworks v. Kansas City*, 62 Fed. Rep. 853, decided by Judge Brewer, more nearly approaches the case at bar than any to which our attention has been called. In that case the contract between Kansas City and the waterworks was very similar to the one in the case at bar. There the contract ran for twenty years; the water company was to create waterworks, which the city was to have at the expiration of twenty years upon payment of the value; and a trial court had held that at the end of the twenty years the city was entitled to take possession of the waterworks without payment. But the circuit court of appeals reversed the case; and Judge Brewer, in delivering the opinion of the court, among other things, said: "We dissent *in toto* from the claim of the city that at the lapse of the twenty years the title to this property, with the right of possession, passed absolutely to it, without any payment or tender of payment, leaving only to the company the right to secure compensation by agreement or litigation, as best it could. . . . . Now, the familiar and ordinary law of business transactions is that he who parts with title receives, at the time, payment. In other words, payment of price and transfer of property are contemporaneous and concurrent acts. When it is affirmed that a contract made by a municipality contemplates that he whose money builds and constructs, and therefore establishes title to, property, shall surrender his title and possession without payment, or even the amount thereof determined, the language compelling such a construction must be clear and imperative. There is no such language in either the act or the ordinance. While it is true that the act provides that no grant so made shall confer the right to operate the waterworks for any period beyond twenty years, yet such provision is no more imperative than the one that at the expiration of the twenty years the city shall purchase and pay therefor. . . . . In so far, therefore, as the decree of the circuit court attempts to transfer the title and the possession to the city before payment, we are con-

strained to hold that it was erroneous." Our conclusion, therefore, is, both upon principle and authority, that the city, at the expiration of the thirty years, had no right to the possession of the waterworks without payment, or tender of payment, of their value.

The court below, when appointing a receiver to collect the water rates and enjoining the water company from collecting such rates, seems to have laid stress upon the consideration that the city was the owner of the water in the Los Angeles river which is used through the waterworks of the water company. It seems to have been determined, however, that the city has only the right to the use of such an amount of the water of the river as is necessary to supply the wants of its citizens and of the municipality; it has not the right of a riparian owner to have the water of the stream flow as it is accustomed to flow, without any regard to its use. It is entitled to the use of the water only when it is in a position to use it, and could not recover damages for its diversion except when it was in a position to use it; and it is apparent that it is not in such position, for it is not in possession of any system of waterworks through which such use could be exercised. It is doubtful if the city, having encouraged the water company in making such large expenditures of money to perfect its system, could enjoin the company from continuing to use the water until the city had entirely ended the contract by paying for the company's works. But, whether or not it could enjoin the company from using the water, there is no principle upon which it could interfere with the contract between the water company and the rate payers, and appropriate to itself the benefit of that contract. And having no right to the possession of the waterworks, or in the contract between the water company and the rate payers, we see no principle upon which, through the appointment of a receiver, it can prevent the water company from enjoying the fruits of its contract with the rate payers.

With respect to the equitable remedy of the water company to enjoin the city from taking possession of the waterworks, we do not see how the city can complain. Not having the power to take possession of the property rightfully, it is just and equitable for the water company to enjoin it from using its municipal

power to take such possession forcibly. In that event, considering the present inability of the city to pay, and the fact that there is no method by which the water company could compel payment within any reasonable time, if at all, the water company would have no remedy that would be in any sense adequate; and we think, therefore, that the remedy by injunction was an entirely proper one. And, in accordance with the views above expressed, there is no just ground for the appointment of a receiver to take away from the water company its current revenues which are necessary to meet its current obligations, when the city would in no event be entitled to that revenue before final settlement and payment by the city of the value of the works. This fact makes it unnecessary to consider the point made by the water company, that a receivership, in fact, destroys the business and rights of a corporation, contrary to the statute.

It is to be observed that the rights of the city, under any view of the proper basis for a final settlement, will be adequately preserved. It is not necessary to here determine what the basis of that final settlement should be; but if it should be finally held that the city should pay the value of the property at the end of the thirty years, with legal interest thereon until the time of payment, and that the water company should account for the intermediate profits, still, upon the estimate of the value of the property made by the city itself, it would be amply protected, even though the settlement be not made, as it should be made, within a reasonably short period.

In accordance with the foregoing views, the orders appealed from in L. A. No. 657 and L. A. No. 658 are, and each of them is, hereby affirmed. In L. A. No. 655 the order appointing a receiver and enjoining the water companies from collecting the water rates, and from appropriating the water rates already collected, is reversed; and in L. A. No. 656 the order refusing to appoint a receiver to take actual possession and to manage and control the property, appealed from by the city, is affirmed.

Garoutte, J., Henshaw, J., Harrison, J., and Temple, J., concurred.

A petition for rehearing having been filed, the following opinion was rendered thereon on the 3d of June, 1899.

THE COURT.—In the above-entitled cases the petition for rehearing is denied. In response to one suggestion in the petition, it is proper to say that if the city of Los Angeles has any rights to the waters of the Los Angeles river as a riparian proprietor, such rights were not involved in these cases and were not considered or determined by the decision.

We also think, after further consideration, that what was said in the opinion about the general character of the ownership of the waters of the river by the city of Los Angeles to the point that it was only entitled to the use of the water when in a position to use it, and could not assert any rights of ownership in the water except when in such position, was unnecessary to the decision, and the same is hereby eliminated from the opinion.

The water company is, substantially, in the position of a mortgagee in possession, having a lien on the property involved as security for the performance of the covenants of the city contained in the contract; and we see no reason, for the present, at least, why their lien and possession should be disturbed or a receiver appointed.